# CHARLESTON.

### HICKMAN v. BALTIMORE & O. R. R. Co.

Submitted September 9, 1887.—Decided November 12, 1887.

1. JUDGMENT BY DEFAULT—ASCERTAINMENT OF DAMAGES—JUSTICE OF THE PEACE.

   According to the common law, as recognized and settled in this State, there can be no final judgment by default in any action at law sounding in damages in the absence of a writ of inquiry either in the Circuit Court or before a justice, when the value in controversy or the damages claimed exceeds $20, and the right of either party, if he demands it, to have such writ executed by a jury, is guaranteed by our Constitution. (p. 298.)

2. JUDGMENT BY DEFAULT—JUSTICE OF THE PEACE—TRIAL DE NOVO ON APPEAL.

   The judgment of a justice rendered upon the verdict of six jurors in an action for damages, in which no defense was made by the defendant, can not be tried de novo by the Circuit Court upon appeal. (p. 298.)

*J. W. Mason* and *H. M. Russell* for plaintiff in error.

*Jos. Marum* and *Frame & Holt* for defendant in error.

SNYDER, JUDGE:

Civil action commenced before a justice of Taylor county, September 26, 1885, by *W. L. Hickman* v. *Baltimore & Ohio Railroad Company*, to recover damages for a trespass.

The summons was duly served, and the defendant appeared, and, by consent of the parties, the case was twice continued, the last time to the twenty second October, 1885. The plaintiff appeared at the time thus fixed, and, after waiting one hour, he stated the grounds of his complaint which the justice recorded as follows: " That on September 18, 1885, at Grafton, in Taylor county, he was a passenger on the railroad cars of the defendant, which is a common carrier for hire, and that while on the said cars as such passenger, the defendant by its servants, to-wit, one Thomas Shipley and others, whose names are to the plaintiff unknown, unlawfully, wantonly, wickedly and in a cruel manner did assault, beat, wound and ill-treat the plaintiff, to the great damage of the plaintiff, to wit, in the sum of $300." The defendant did not enter any plea of denial or defence. The plaintiff demanded a jury, which was called, and sworn by the justice " to diligently inquire and truly ascertain the damages, if any, which the plaintiff has sustained by reason of the wrongful acts of the defendant, The Baltimore & Ohio Railroad Company, as mentioned in the said complaint, and a true verdict render according to the evidence." The case was tried, and the jury found a verdict for the plaintiff for $250.00 damages. The justice entered judgment for that sum and the costs against the defendant. On the day after the judgment was rendered the defendant filed its bond with the justice, and was allowed an appeal to the Circuit Court of said county. On January 21, 1886, the appeal was docketed in the Circuit Court, and upon the same day upon the motion of the plaintiff that court dismissed the appeal at the defendant's costs. It is from this action of the Circuit Court that the defendant obtained the present writ of error.

In 1880, the thirteenth section of article 3 of the Constitution of this State was amended so as to read as follows: " In suits at common law, where the value in controversy exceeds twenty dollars, exclusive of interest and costs, the right of trial by jury, if required by either party, shall be preserved; and in such suit, before a justice, a jury may consist of six persons. No fact tried by a jury shall be otherwise re-examined in any case than according to the

rules of the common law." In *Barlow* v. *Daniels*, 25 W. Va. 512, this Court decided that this constitutional provision embraces and governs cases tried by a jury of six persons before a justice, and that such cases can not be re-tried *de novo* by the Circuit Court. In reference to this provision the Court, in the opinion delivered in that case, says: " This is a positive guarantee, an imperative command, that in all cases at common law,—that is, all cases which are not cases in equity or admiralty, according to the established practice in England at the time of our separation from her,—where the value in controversy is over $20.00, the trial by jury shall be preserved, and that in no such case can any party, if he requires it, be deprived of the right of such trial. The court in which such trial is to be had is not fixed, but the right is made inviolate, and, consequently, in whatever tribunal such case may be, the right must exist in that tribunal. This sacred and absolute right can not be taken away or impaired, either by the form of the proceeding, or by the constitution of the tribunal in which said suit may be brought. It is the right, and not the proceeding, that is guaranteed by the Constitution. It is, therefore, entirely immaterial whether the justices' courts in this State are courts of record or not; nor does it matter that, according to the common law, they had no civil jurisdiction, and no error lay to them. The right protected is entirely distinct from the form of the proceeding in which it is asserted." 25 W. Va. 518, 519. It would seem that this decision is conclusive of the case at bar. This is certainly a common-law case, and as it is decided that in " no such case can any party, if he requires it, be deprived of the right of such trial,"—that is, trial by jury,—the plaintiff was entitled to a trial by jury, in this case, and having required a jury, and had the case tried by jury the case can not again be tried *de novo* by appeal in the Circuit Court. But it is sought to distinguish this case from that of *Barlow* v. *Daniels* upon various grounds. It is asserted that the right of trial by jury, secured by the Constitution is not a right to have a jury, whenever the plaintiff brings a suit at common law, but only a right to have a jury, where the value in controversy exceeds $20.00.

. It is claimed that because the defendant failed to plead or deny the plaintiff's cause of action, there was no controversy in this case; that the word "controversy" implies not only a suit, but a suit in which something is affirmed upon the one side and denied upon the other, in which there is a dispute,—an issue to be tried. If this be conceded to be the true interpretation of the word "controversy" in the Constitution, then by applying the same interpretation to the statute, under which the defendant seeks to maintain its appeal in the Circuit Court, the right of appeal does not exist in this case. The statute declares that in all cases an appeal shall lie from the judgment of a justice to the Circuit Court, "when the amount in controversy on the trial before the justice exceeds fifteen dollars." Section 163, ch. 50, Amend. Code, p. 416. It therefore inevitably follows that if there was nothing in controversy on the trial before the justice, the defendant was not entitled to an appeal to the Circuit Court.

It is also insisted that, unless there is to be a trial before the justice, the Constitution does not give the party a right to a jury. The word "trial," it is claimed, implies an issue, the decision of the issue in fact is called a trial, citing Steph. Pl. 76, 77, and 3 Bl. Comm. 330. This position, as I shall endeavor to prove by the authorities, is either in evasion of the question presented in this case or a misapprehension of the law. The claim of the plaintiff in error is that, unless there was an issue to be tried, the plaintiff according to the rules of the common law was in no case entitled to a trial by jury; and if a jury was called to inform the conscience of the court in such cases, as was sometimes done, the verdict was in no respect binding upon the court and might be wholly ignored and treated as a nullity. According to the common law, when there was an interlocutory judgment, whereby the right of the plaintiff was established, but the *quantum* of damages sustained by him was not ascertained, the plaintiff was entitled to the intervention of a jury to ascertain his damages. This is the case, where the defendant suffers judgment to go against him by default or *nihil dicit*, that is, where he puts in no plea at all to the plaintiff's declaration; or by *non sum informatus*,

when the defendant's attorney declares he has no instructions to say anything in answer to the plaintiff or in defence of his client. This is a species of judgment by default. If these, or any of them, happen in actions where the specific thing sued for is recovered, as in actions of debt for a sum certain, the judgment is absolutely complete. But where damages are to be recovered, a jury must be called in to assess them, unless the defendant, to save charges, will confess the whole damages laid in the declaration; otherwise, the entry of the judgment is " that the plaintiff ought to recover his damages, but because the court knows not what damages the said plaintiff hath sustained, therefore the sheriff is commanded that by the oaths of twelve honest and lawful men he inquire into said damages, and return such inquisition into court." This process is called a writ of inquiry, in the execution of which the sheriff sits as judge, and tries by a jury, subject to nearly the same law and conditions as the trial by jury at *nisi prius*, what damages the plaintiff has really sustained; and when their verdict is given, which must assess some damages, the sheriff returns the inquisition, which is entered upon the roll in manner of a *postea*, and thereupon it is considered that the plaintiff do recover the exact sum of damages so assessed. 3 Bl. Comm. 397, 398; Steph. Pl. 133, 134; Tidd. Pr. 295–297; *Brill* v. *Neele*, 1 Chit. 619; 18 E. C. L. 180; 4 Minor Inst. pt. 1, (602,) 648. Some of the old English authorities seem to hold that the return of the inquest or the writ of inquiry merely informs the conscience of the court, which might, if it chose to do so, in all cases assess the damages itself, and thereupon give final judgment. *Beardmore* v. *Carrington*, 2 Wils. 244; *Bruce* v. *Rawlins*, 3 Wils. 61. The doctrine announced in those two cases was merely *obiter* and incidental; it was not involved in the questions decided.

But it is unnecessary for the purposes of this case to dispute the doctrine thus announced. If we admit that a common-law court has a conscience, which may be enlightened, a rather heretical admission, it must be something of the same character as, and certainly no more scrupulous or inflexible than the conscience of a court of chancery. Under the practice in a court of chancery the chancellor may, in cer-

tain cases, direct an issue to be tried by a jury to enlighten his conscience. But when in a proper case such issue is directed, the verdict returned in response thereto is as binding upon the court as a verdict in any other case. It can not disregard it or arbitrarily set it aside. In *Nease* v. *Capehart*, 15 W. Va. 300, this Court, following the law as settled in Virginia and elsewhere, decided, that "the object in directing the issue is to satisfy the conscience of the chancellor, but that conscience must be satisfied with the verdict of the jury upon an issue properly directed, where no errors have been committed during the trial thereof, either by the court or by the jury, to the prejudice of either party." *Carter* v. *Campbell*, Gilmer 159 ; *Lee* v. *Boak*, 11 Gratt. 182 ; *Fitzhugh* v. *Fitzhugh*, ld. 210 ; *Henry* v. *Davis*, 7 W. Va. 715.

"The right of trial by jury," which the Constitution declares " shall be preserved," must be understood to be the common-law right, as settled and existing in this State in 1880, the time at which the amendment under consideration was adopted by the people. This being so, it is not very important to know what that right was claimed to be in England in 1764, when the cases in Wilson's reports, above cited, were decided. Referring to some of the Virginia cases, on which our practice is founded, we find that it has long been the settled law of that State in all cases at law sounding in damages, that a plaintiff, where the defendant failed to appear or plead, could not obtain a final judgment without the intervention of a jury. In *Metcalf* v. *Battaile*, Gilmer 191, where the action was debt against the maker and indorser of a note, the defendant did not appear, and the inferior court gave judgment against him for the debt and interest. The appellate court reversed this judgment, stating as a reason therefor, that "neither the interest nor a final judgment for the principal sum could be given upon the note without the intervention of a jury."

In *James River, etc., Co.* v. *Lee*, 16 Gratt. 424, the syllabus is as follows : "An office-judgment in an action of ejectment does not become final without the intervention of a court or jury ; but there ought in every case to be an order for an inquiry of damages." The court in its opinion in that case after reviewing a number of Virginia cases says : " These cases

clearly show, that under the Code of 1819 the award of a writ of inquiry was necessary in every case of an office-judgment against a defendant, except the case of an action of debt upon instruments of writing for the payment of an ascertained sum of money absolutely and unconditionally."

"An inquiry of damages is, in general, requisite in all cases where the amount of the demand, and the defendant's liability to pay it, are not ascertained (at least *prima facie*) by his own written acknowledgment, or something equivalent thereto. * * * Thus an order or writ of inquiry is necessary in all actions of ejectment, and for all torts." 4 Minor Inst. (602,) 648. Prof. Minor, after stating how the writ of inquiry was formerly executed in England, which is in the manner heretofore stated, says: " With us no writ issues, but the order is executed in court, generally by a jury, although if neither party desire a jury, it is made the duty of the court to ascertain the damages, and from what time interest shall be computed, and to give judgment for such damages and interest." 4 Minor Inst. (602,) 649. Such is now our practice, and was the law in this State at the time our Constitution was adopted.

Our Constitution, as will be seen, declares in express terms that " the right of trial by jury, if required by either party, shall be preserved." This right, in nearly the same language as that employed in the Constitution, and used in the common law as it existed in this State at the time our Constitution was adopted, is enforced by our statute. It provides that " either party to a civil action before a justice, when the value in controversy, or the damages claimed, exceed twenty dollars, or the possession of real estate is in controversy, shall be entitled under the regulations herein prescribed to a trial by six jurors, if demanded." Section 72, ch. 50, Amend. Code, p. 398. It will be observed that the right to a jury trial is given by this statute, not only in cases where there is a controversy, but in all civil actions when damages are claimed. The language used is mandatory and unqualified. It does not say the right shall exist only in cases where both parties appear and make up an issue, but it gives the right in all cases, when demanded by either party.

If, however, notwithstanding what we have already shown, it is still insisted that an issue or denial on behalf of the de-

fendant of the plaintiff's cause of action is indispensable to entitle the plaintiff to trial by jury, the statute itself interposes such denial and makes up an issue in all cases where the defendant fails to appear. It declares: "When a defendant does not appear, the plaintiff can not recover without proving his case." Section 68, ch. 50, Code. This statute pleads the general issue for the defendant, and puts the plaintiff in precisely the same situation that he would be in, if such plea had been put in by the defendant himself. It presents both an issue and a controversy, which places the whole burden of proving his case upon the plaintiff.

But it is suggested that the second sentence of this section 68 of the statute, which provides that "the justice, if the process has been served on the defendant, shall in such case proceed to hear the allegations and evidence of the plaintiff, and render judgment as the right shall appear," makes it the duty of the justice to determine such case without the intervention of a jury. This, it seems to me, is a very narrow and unauthorized construction. Statutes in *pari materia* must be reconciled by construing them together as a whole. Therefore, in connection with this section, we must read section 72 of the same statute, which declares in general and unqualified terms that "either party to a civil action before a justice * * * shall be entitled * * * to a trial by six jurors, if demanded." Taking these provisions of the statute together, the first simply means that it shall be the duty of the justice to hear the case, if neither party demands a jury. There are no negative words used to exclude this construction. The Constitution also declares, as we have seen, that "the right of trial by jury, if required by either party, shall be preserved." This language is unqualified and necessarily includes all civil cases. If, therefore, we adopt the construction claimed for the plaintiff in error, the provision in section 68 will not only be inconsistent with section 72, but in conflict with the express command of the Constitution. The Legislature has no authority to impose limitations or restriction upon rights expressly guaranteed by the organic law; consequently the effect of yielding to the interpretation claimed by the plaintiff in error would be to declare the statute unconstitutional, a thing we are not at

liberty to do, unless the conflict is entirely irreconcilable. Cooley Const. Lim. 163.

In *Railroad Co.* v. *Morris*, the Supreme Court of Texas held that a statute of that State which provided for a jury for defendants in cases where judgment is rendered by default, but made no provision for a jury for plaintiffs in such cases, could not deprive the plaintiff of the right to a trial by jury in such cases, because its bill of rights (section 15) "preserves to all parties the common-law right of trial by jury." The court, in its opinion in that case, says: "We are of the opinion, however, that under the course of the common law, where a judgment was rendered by default, and the cause of action was not liquidated, a jury was always called to assess the damages. If this be so, the right is preserved by the fifteenth section of our bill of rights, and can not be infringed by any act of the Legislature. In a very numerous class of cases, the amount of damages is the important question to be determined, and the one in which the plaintiffs have the most interest in a trial by jury." 3 S. W. Rep. 457, 462. In *Pratte* v. *Corl*, 9 Mo. 163, the Supreme Court of Missouri decided that, "on a judgment by default, the court can not assess the damages, unless the suit be founded on an instrument in writing by which the demand is ascertained." This was an appeal from a justice's court. See, also, *Swearingen* v. *Knox*, 10 Mo. 31.

It necessarily results from what has preceded that according to the common law, as recognized and settled in this State, there can be no final judgment by default, or otherwise, in the absence of a writ of inquiry, in any action at law in the Circuit Court, or before a justice, when the value in controversy exceeds $20.00, where the action is for damages, or where the sum which the plaintiff is entitled to recover is not definitely ascertainable from the contract sued on, or the confession of the defendant, and the right of either party, if he demands it, to have such writ executed by a jury, is guaranteed by our Constitution. This right does not depend upon the condition of the pleadings, or the conduct of the adverse party. It is a right which may be invoked by either party, whatever may be the wishes or the actions of the opposite party.

A number of decisions in Virginia and this State have been referred to for the purpose of showing that without an issue there can not, in contemplation of law, be a trial by jury. Among these cases are the following: *Stevens* v. *Taliaferro*, 1 Wash. 155; *Snyder* v. *Burke*, 4 Rand. 161; *Rowans* v. *Givens*, 10 Gratt. 250; *Railroad Co.* v. *Faulkner*, 4 W. Va. 180; *Ruffner* v. *Hill*, 21 W. Va. 159; and *Brown* v. *Cunningham*, 23 W. Va. 109. All these cases involve the same point, and simply hold that when the parties have appeared and commenced to plead they must perfect their pleading and arrive at an issue before proceeding to the trial. In all of them there was a failure to make up the issue, and the defect was so radical that it was not cured by the statute of *jeofails*. Yet in each case, while there was in fact no issue, the jury was sworn to try the issue. The court, therefore, held that there was a mistrial, upon the ground that the jury were improperly sworn to try the issue or issues, when there was in fact no issue. The judgments were not reversed merely because the cases were tried by a jury. The result would have been the same if the cases had been tried by the court in lieu of a jury. In fact, in one of the cases above relied on, *Railroad Co.* v. *Faulkner*, the Court decided "if the intervention of a jury is waived, and the evidence is heard by the court, and judgment rendered without issue having been joined, it is as equally erroneous as if the case had been tried by a jury."

None of those cases have any application to the questions presented in the case at bar. In this case the jury were not sworn to try the issue, but they were sworn to ascertain the damages of the plaintiff, the usual oath in executing writs of inquiry. There was no appearance by the defendant to the action in this case, and no attempt to try any issue, as was the fact in all of the above mentioned cases. The case here was one of pure damages for a tort, an assault and battery, a case peculiarly suited to a trial by jury. It would have clearly been error if the justice had refused a jury upon the demand of the plaintiff, and consequently it was not error, much less a nullity, to allow a trial by jury. And the case having been thus properly tried by a jury, and a judgment rendered on their verdict, the Cir-

cuit Court, according to the decision of this Court in *Barlow* v. *Daniels*, 25 W. Va. 512, had no authority to try the case *de novo*, or to entertain an appeal from said judgment.

The judgment of the Circuit Court was therefore right, and must be affirmed.

---

WOODS, JUDGE, dissenting :

I am unable to concur in the conclusion announced by the majority of the Court, and in much of the reasoning on which these conclusions are based.

After a careful consideration of all the authorities relied upon, and of all fair deductions therefrom, I feel obliged to say that in my opinion the conclusions reached by the majority of the Court are not warranted by the Constitution of the State, and that the reasons given in support of them are unsound.

These reasons might well be addressed to a convention forming a constitution, to induce it to adopt such views; but it seems to me they should have very little weight with this Court when asked to supply by construction, what may in the opinion of some persons be regarded as an oversight or omission. I will now proceed to consider the questions arising in the case in judgment.

In doing so, I propose briefly to review the various provisions which in my judgment are as well worthy of consideration as is the 13th section of the bill of rights (art. III) as amended in 1880, which declares : " In suits at common law where the value in controversy exceeds twenty dollars, exclusive of interest and costs, the right of trial by jury, if *required* by either party, must be *preserved;* and in such suit before a justice a jury may consist of six persons. Nq fact tried by a jury shall be otherwise re-examined in any case than according to the rules of the common law."

By the first section of Article VIII of the Constitution, " The judicial power of the State is vested in a Supreme Court of Appeals, in Circuit Courts and the judges thereof, in such inferior tribunals as are herein authorized, *and in justices of the peace.*"

By sections 3, 12 and 28 the jurisdiction of the Supreme

Court of Appeals, of the Circuit Courts, and of justices of the peace is prescribed.

The Circuit Courts " have supervision and control of all proceedings before justices and other inferior tribunals by *mandamus*, prohibition, and *certiorari*. They have, except in cases confined exclusively by this Constitution to some other tribunal, original and general jurisdiction of all matters of law where the amount in controversy, exclusive of interest, exceeds fifty dollars, of all cases of *habeas corpus*, *mandamus*, *quo warranto*, and prohibition, and of all cases in equity, and of all crimes and misdemeanors."

By said 28 section of article VIII of the Constitution as amended in 1880, it is declared, "The civil jurisdiction of a justice of the peace shall extend to actions of assumpsit, debt, detinue and trover, if the amount claimed, exclusive of interest, does not exceed three hundred dollars." * * * "And the Legislature may give to justices such additional civil jurisdiction and powers within their respective counties, as may be deemed expedient, under such regulations and restrictions as may be prescribed by general law, except that in suits to recover money or damages, their jurisdiction and powers shall in no case exceed three hundred dollars. *Appeals shall be allowed from justices of the peace in such manner* as may be prescribed by law."

In endeavoring to ascertain the true construction of these constitutional provisions, we are bound to give effect to the *intent of the people in adopting* it. But this intent is to be found in the instrument itself, and it is to be presumed that language has been employed with sufficient precision to convey it, and unless the presumption does not hold good in the particular case nothing will remain except to enforce it, and where a law is plain and unambiguous, whether it be expressed in general or limited terms, the Legislature should be intended to mean what they have plainly expressed, and consequently no room is left for construction. *Possible* or even probable meanings, when one is plainly declared in the instrument itself, the courts are not at liberty to search for elsewhere.

Whether we are considering an agreement between parties, a statute or a constitution, with a view to its interpreta-

tion, the thing which we are to seek is the *thought which it expresses.*

"To ascertain this the first resort in all cases is to the natural signification of the words employed, in the order of grammatical arrangement in which the framers of the instrument have placed them.  If thus regarded, the words embody a definite meaning, which involves no absurdity, and no contradiction between different parts of the same writing, then, that meaning apparent upon the face of the instrument, is the one which alone, we are at liberty to say, was intended to be conveyed."

Another rule of construction equally imperative requires, that the *whole* instrument is to be examined with a view to arrive at the intention of each part.  And if any section be intricate, obscure or doubtful, the proper mode of discovering its true meaning is by comparing it with the other sections, and finding out the sense of one clause by the words or obvious intent of another.  And in making this comparison it is not to be supposed that any words have been employed without occasion or without intent that they should have effect as part of the law.

The rule applicable here is, that *effect is to be given, if possible, to the whole instrument, and to every section and clause.*

If different sections seem to conflict, the courts must harmonize them, if practicable, and lean in favor of a construction which will render every word operative, rather than one which will make some idle and nugatory.  Co. Lit. 381, *a*; *Att'y Gen'l* v. *Detroit & Erin*, Pl. B. Co., 2 Mich. 138; *People* v. *Burns*, 5 Ib. 114; *Manly* v. *State*, 7 Md. 135; *Parkinson* v. *State*, 14 Md.; *Belleville R. R. Co.* v. *Gregory*, 15 Ills. 20; *Brooks* v. *Mobile School Com'rs*, 31 Ala. 227; *Bigelow* v. *Wisconsin R. R. Co.*, 27 Wis. 478; Cooley Const. Lim. 55, 58.

Before the amendment to the Constitution made in 1880, the jurisdiction of a justice was limited to an amount not exceeding $100.00, exclusive of interest, and in all suits before a justice where the amount in controversy exceeded $20.00, the defendant was secured a trial by jury, by removing the cause as a matter of right to the County Court, there to

be tried. But if he did not so remove the cause, he waived his right to have it tried by a jury, for by the 13th section of the bill of rights, as it then stood, in trials of civil cases before a justice no jury was allowed.

The said section contained the same clause now found in the same section as amended in 1880,—that "No fact tried by a jury shall in any case be otherwise re-examined than according to the rules of common law."

It is apparent that when it was introduced into the Constitution of 1872 it was not intended to apply, and could not apply, to trials before a justice, and that it did, and could only apply to trials in the Circuit, or County Courts, or to such inferior tribunals as were mentioned in the 19th section of said 8th article.

The Circuit and County Courts were courts of record, and their proceedings were according to the rules of the common law, and their judgments were generally reviewable by writ of error, and were only reversible for errors apparent upon the face of the record, whether they appeared in the pleadings or by bills of exceptions,—and never by appeal. With this practice in Virginia the people of West Virginia were perfectly familiar, and the difference between the effect of a writ of error to a judgment of the Circuit or County Court, and an appeal from the judgment of a justice, was understood by every suitor in her courts.

The effect of the former was confined to errors apparent upon the record; that of an appeal, was to give the appellant a trial *de novo*, without regard to anything which took place on the former trial. On the hearing of the writ of error the judgment remained in full force until reversed, while an appeal from the judgment of a justice operated as an instant and complete extinguishment of the judgment.

The construction contended for by the defendant in error, and allowed by the majority of the court to prevail, while it appears to be in accord with the letter of the first clause of said 13th section of the Constitution as amended in 1880, which provides that "the *right of trial* by jury if *required* by either party shall be *preserved.*" is utterly subversive, and renders entirely nugatory that clause in section 28 of article VIII, which declares that "*Appeals shall be allowed*

*from justices of the peace* in such manner as may be prescribed by law." No security remains for this right, when a party can be deprived of it, in every case, at the pleasure of his adversary, by requiring the cause to be tried by a jury, although no defence has been made to his action. Such a construction allows one clause seemingly, in conflict with another, to render it nugatory, whereas both may well stand together.

The Constitution does not recognize a justice of the peace as a court. His proceedings are not matters of record as are those of the Circuit Courts. The justice 'does not, and in the whole judicial history of Virginia and West Virginia he never did and never could proceed according to the rules of the common law. All of the jurisdiction in civil suits which he ever exercised have been conferred upon him by statute, and never yet in the history of Virginia or this State has the Legislature conferred upon him any authority, in the trial of civil actions, to make the proceedings before him matters of record that they might be re-examined according to the rules of the common law. And when I call to mind the fact that his jurisdiction has been extended to all actions of assumpsit, detinue and trover where the amount claimed, exclusive of interest, does not exceed $300.00, I can not adopt a construction by which the defendant may be deprived of the right to have his case tried upon an appeal before a court learned in the law, because the plaintiff has selected his tribunal and there required a jury for the trial thereof, although no matter in difference appear before the justice, for the trial of which a jury may be called.

When the 28th section says "*Appeals shall be allowed* from judgments of justices of the peace in such manner as may be prescribed by law," the Constitution used words which have a clear and well-defined signification familiar to the courts, constitutions, statutes, suitors, and people of the State, I must understand it to use the word " appeal " in its plain signification and as a substitute for *certiorari* or any other common-law writ.

Much stress is laid upon the conclusion announced by this Court in *Barlow* v. *Daniels & Co.*, 25 W. Va., 572, in which I fully concurred.

But the circumstances in that case were wholly dissimilar

to those in the case under consideration, and in every case the conclusions announced by the Court must be regarded as arising out of and resting upon its peculiar circumstances, and not as equally applicable to every case without regard to the previous action of the parties in the suit or the circumstances surrounding it.

No better illustration of this difference in circumstances and conduct of the parties can be found than is presented between the case of *Barlow* v. *Daniels & Co.* and that under consideration.

In the former, Barlow brought his action before a justice against Daniels & Co. to recover $53.85 due by contract. On the demand of the *defendants* the case was tried before the justice by a jury of six and a verdict of $47.87 found for the plaintiff, on which the justice gave judgment.

From this judgment the *defendants* appealed to the Circuit Court, which dismissed the appeal, and upon a writ of error the judgment of the Circuit Court was affirmed by this Court, which held that the provisions of section 13 of Art. 3 of the Constitution of this State as amended in 1880, which declares that "No fact tried by a jury shall be otherwise re-examined in any case than according to the rules of the common law," applies to causes tried by a jury of six, and prohibits the re-trial of such causes by the Circuit Courts under the provisions of chapter 8, Acts 1881.

It will be observed that in *Barlow* v. *Daniels & Co.* the *defendants* appeared to the action and *demanded* a trial by a jury, and that upon their request such trial was had.

It is fair to presume that before they demanded a jury, the defendants answered the plaintiff's complaint, either by denying the allegations thereof or some of them, or by a statement of facts constituting a defence or counter claim, and that the matter in differance between them had been ascertained, and that the jury had been sworn by the justice "well and truly to try the matter in difference between the plaintiff and defendants, and a true verdict give according to the evidence."

There is but little resemblance between the circumstances of that case and the case under consideration.

In *that* case, the *defendants* appeared before the justice,

*answered* the plaintiff's complaint, and *demanded* a trial by jury.

In the case under consideration, although the defendant appeared to continue the cause he never afterward appeared or answered the plaintiff's complaint, and in his absence, and without his knowledge or consent, the plaintiff demanded a jury, and the case was tried by a jury of six before the justice, when it did not "appear there was any matter of difference between the plaintiff and defendant." "In suits at common law, where the value in controversy exceeds twenty dollars, exclusive of interest and costs, the right of the trial by jury, if required by either party, shall be preserved; and in such suit before a justice, a jury may consist of six persons. No fact tried by a jury shall be otherwise re-examined in any case than according to the rules of the common law." Const., art. 3, sec. 13.

This constitutional provision so far as it secures to parties to suits at common law the right of trial by jury, when the value in controversy, exclusive of interest and costs, exceeds $20.00, even when such suit is before a justice, is taken substantially from art. 7 of the amendments to the Constitution of the United States.

This Court has already decided that the right of trial by jury referred to in this section, is the same right possessed by parties to suits at common law at the time the Constitution of the United States was adopted.

Whatever these rights may have been, are by sec. 13 of art. 3 of the Constitution of this State, *preserved*, whether such trial be in a court of record, or before a justice.

The object of the provision is to *preserve* rights already *possessed*, and not to grant additional rights to parties to such suits; and having preserved and secured the right in both tribunals it forbids the re-examination of any fact tried by such jury in any other manner than according to the rules of the common law.

Section 28 of art. 8 of the Constitution prescribes the civil jurisdiction of a justice as follows: "The civil jurisdiction of a justice of the peace shall extend to actions of assumpsit, debt, detinue and trover, if the amount claimed, exclusive of interest, does not exceed $300.00  *  *  *  and the Leg-

islature may give to justices such additional civil jurisdiction and powers, within their respective counties as may be deemed expedient, under such regulations and restrictions as may be prescribed by general laws; except that in suits to recover money or damages their jurisdiction and powers shall in no case exceed $300. *Appeals shall be allowed from judgments* of justices of the peace in such manner as may be prescribed by law.

By virtue of this last provision of the Constitution, sections 8, 9, 10, 11 and 12 of chapter 50 of the Code as amended by chapter 8 of the Acts of 1881, extend the jurisdiction of justices, within their several districts and counties, to all civil actions for the recovery of money or the possession of property, including actions in which damages are claimed as compensation for an injury or wrong: *Provided*, the amount of money or damages, or the value of the property claimed, does not exceed $300, exclusive of interest and costs.

There is but one form of action in the justice's court, denominated a " civil action," and the summons whereby the same is commenced is in the most general terms.

But in order to obviate the uncertainty arising out of the general averments contained in the summons, section 50 of chapter 50 of the Code has prescribed the following rules of pleading, which it declares shall be observed in proceedings in justice's courts:

I. The pleadings are—

*First.* The complaint by the plaintiff.

*Second.* The answer of the defendant.

II. " The pleadings may be oral or in writing; if oral, the substance of them shall, by the justice, be entered in his docket; if in writing, they shall be filed by him and a reference to them be made on the docket. In either case, if the parties appear and the defendant *make defence*, they shall be made upon the return day of the summons, unless good cause be shown to the contrary."

III. " The complaint shall state in a plain and direct manner the facts constituting the cause of action; and if more than one cause of action be stated therein, each shall be separately stated and numbered."

IV. " The answer of the defendant may contain—

40

" *First.* A denial of the complaint or some part thereof.

" *Second.* A statement of the facts constituting a defence or counter-claim."

V. " Such pleadings are not required to be in any particular form, but must be such as to enable a person of common understanding to know what is intended."

Although by these provisions of the statute, the forms of common law actions in proceedings before justices of the peace are abolished, and all formality in the pleadings; whether oral or in writing, is dispensed with, yet as they necessarily manifest the " matters in difference between the plaintiff and the defendant," the end of all common-law pleadings is substantially attained by bringing the parties to an issue.

The *complaint,* whether oral or in writing, sets forth the cause of action, the answer of the defendant, *if any be made,* his defence or counter claim. The complaint and the answer are both entered on the docket of the justice, and thereby the " matters in difference between the plaintiff and defendant " plainly appear.

As to the " matters in difference between them," they are at issue, and this issue may be tried in either of the two modes prescribed by the statute.

But if the defendant fail to answer the complaint by denying the same, or some part thereof, or by a statement of facts constituting a defence or counter claim, there can be no issue between him and the plaintiff, because an issue can only arise when some fact material to the determination of the controversy is affirmed on one side and denied on the other.

In that case also the statute provides a mode in which the plaintiff may establish and obtain judgment for his demand.

Having seen in what manner the proceedings in an action before a justice are brought to an issue, I will now consider what provisions are made for the trial of the *issue* in one case, and for the trial of the *cause* in the other, when *no such issue* has been reached.

The rules of proceedings before the justice require, that " if the parties appear, and the defendant make defence, the plead-

ings shall be made up on the *return day* of the summons, unless good cause be shown to the contrary;" and thus the "matter in difference," that is, the *issue* between them to be tried, was evolved at the earliest practicable moment; but if the defendant failed to appear, or if he appeared but made no defence, no pleadings could be made up between them, and so, in either event, the cause was ready for trial in one of the two methods prescribed by the statute; in the latter case, by the *justice*, and in the former, by the *justice*, *or*, if either party required it, by a *jury*.

The defendant was allowed but one hour after the time mentioned in the summons to determine whether he would or would not make defence to the action; for by section 65 of chap. 50 of the Code neither party was bound to wait for the other longer than that time, and at the end of the hour the justice, unless engaged in the trial of another action, was required to proceed with the trial of the cause.

At the common law, if the defendant after having been duly summoned, failed to appear and plead to the action, a judgment by default was entered against him, which, unless set aside, was conclusive of the plaintiff's right to a recovery for the cause of action mentioned in his declaration, and only left to the defendant the right to dispute the *amount* of such recovery, which was usually done upon a writ of inquiry to ascertain the amount of the plaintiff's damages, and in all such cases, there was no trial and there could be no *trial* by a jury, for until an issue of fact was evolved from the pleadings there was nothing on which the functions of a jury could be called into exercise, and all cases where trials by jury have been had without issue joined, they have invariably been set aside as wholly unauthorized by law.

This has been repeatedly held in Virginia before, and in this State since its formation, and must be regarded as settled law, correctly announcing the common law rule on that subject. *Stevens* v. *Talhaffer*, 1 Wash. 155; *Kerr* v. *Dixon*, 2 Call 379; *Taylors, &c.* v. *Huston*, 2 H. & M. 161; *Wilkinson's adm'r* v. *Bennett*, 3 Munf. 316; *Snider* v. *Burke*, 4 Rand. 161; *McMillion* v. *Dobbins*, 9 Leigh 422; *Rowans* v. *Givens*, 10 Gratt. 250; *B. & O. R. R.* v. *Gettle*, 3 W. Va.

376; *B. & O. R. R.* v. *Christie,* 5 W. Va. 325; *Gallatin* v. *Haywood,* 4 W. Va. 1; *B. & O. R. R.* v. *Faulkner,* 4 W. Va. 180; *State* v. *Conkle,* 16 W. Va. 736; *State* v. *Douglass,* 20. W. Va. 770; *Ruffner* v. *Hill,* 21 W. Va. 159; *Brown* v. *Cunningham,* 23 W. Va. 159.

It is unnecessary to refer particularly to all of these cases, for they all alike hold, that without an issue there cannot in contemplation of law, be a *trial* by a *jury,* and the reason lying at the foundation of all these decisions is, that at the common law it was only when an *issue in fact* was joined that a writ of *venire facias* could be awarded, as will appear by the form of the writ itself, given by Mr. Stephens in his work on pleadings, pp. 78 and 79, which is as follows :
"A. B.⎫
   *v.*  ⎬
"C. D.⎭

"IN THE KING'S BENCH,         ⎫
· "The — day of ——, in the year of our Lord, —.⎭

A. B., the plaintiff in this suit, complains of C. D., (as in his declaration) and the said defendant, by his attorney, says, (as in his plea) and the said plaintiff says (as in his replication), and the said defendant says (as in his rejoinder), and the said plaintiff does the like. Thereupon the said sheriff is commanded that he cause to come here on the — day of —— twelve good and lawful men of the body of your county, qualified according to law, by whom the truth of the matter may be better known, and who are in no wise of kin to A. B., the plaintiff, or C. D., the defendant, to make a certain jury of the county between the parties aforesaid on a plea of (naming the action) because as well the said defendant as the said plaintiff, between whom *the matter in variance* is, have put themselves upon that jury."

The only means the sheriff himself had of knowing what was the "matter in controversy," so as to obey the writ appears to have been the *venire facias* itself, which then stated the *nature of the issue,* instead of being confined as now to a short statement of the form of the action.

The jury anciently consisted of persons who were witnesses of the facts or at least in some measure personally cognizant of them, and who consequently in their verdict gave but their testimony as to the facts which they had previously

known, and not as now, the conclusion of their judgment upon facts proved before them in the cause.

The *venire facias* issued to summon a jury in those days did not, as at present, direct the jurors to be summoned from the *body of the county*, but from the immediate neighborhood where the facts occurred, and from among those persons who best knew the truth of the matter.

The principles upon which the common law required the jury to form their decisions are these: 1st. They are to take no matter into consideration but the *question in issue*, for it is to try *this issue*, and that only, they are summoned; 2d. They are bound to give their verdict for the party who upon the proof appears to them to have succeeded in establishing his side of the issue; and 3d. The burden of proof generally is upon that party who in pleading maintained the affirmative of the issue.

This decision of the *issue in fact* is called the "*trial.*" Steph. Pl'g, 77. It follows, therefore, that there could be no *trial by jury* where there is no matter of fact in issue for their examination. 3 Bl'k Com., 330, 332.

This principle of the common law has always been recognized as in full force in Virginia, and in this State, and I have found no case where it has been announced with greater perspicuity and force than in *Ruffner* v. *Hill*, 21 W. Va., on page 161, where Judge Green, delivering the opinion of the Court, says, " By the common law, and our universal practice, no jury can be empanelled, and no case can be tried by a jury, till there has been an issue made by the pleadings of the parties, and that such issue in the case must appear by the record." " It is a fundamental principle of the common law, that the parties, by their pleadings, must come to issue before any case can be disposed of, or *tried by a jury.*" " The real ground upon which these decisions rest, is, that by the common law, the court has no right to make up the issue, and impanel a jury to try it; but the parties, by their pleadings, must *first* come to *an issue*, and then it is tried by a jury."

This Court announced the same principle in *Brown* v. *Cunningham*, 23 W. Va. 109, and in 3 W. Va. 376; 4 W. Va. 1 and 180; 5 W. Va. 325; 16 W. Va. 736, and 20 W. Va. 770, *supra.*

These authorities warrant me in coming to the conclusion, that when the parties to a common-law action before a justice of the peace, have not by their pleadings come to issue, there can be *no trial* by a jury, and if in the absence of such issue, the justice shall nevertheless empanel a jury for the trial of the cause, although it may have been done at the request of the plaintiff, such pretended *trial*, as a *trial by a jury* is in fact *no trial*, in the sense in which that term was used in suits at common law, and in said 13th section of art. 3 of the Constitution, and therefore no fact considered or passed upon in such pretended *trial* can be held to have been "tried by a jury," so as to deprive the defendant, if otherwise entitled to it, of his right to appeal from the judgment of the justice rendered on any verdict obtained in such a trial.

By the common law, as I have already shown, if the defendant, after having been summoned, failed to appear and plead to issue, a judgment by default was entered against him, which relieved the plaintiff of the necessity of proving any fact necessary to establish his right to a recovery in his action, and the defendant thereafter could only contest the amount which the plaintiff was entitled to recover, as his right to some recovery was conclusively settled by the judgment by default.

But this rule of the common law is changed in this State in proceedings before a justice; for although the defendant does not appear, yet there can be no judgment by default against him, for it is expressly declared by section 68 of chapter 50 of the Code, that "when a defendant does not appear, the plaintiff can not recover without proving his case;" or in other words, without proving his *right* to recover as well as the *amount* which he is *entitled* to recover.

By the same section it is further declared, that where the defendant so fails to appear, "the justice, if the process has been served on the defendant, *shall* in *such case* proceed to hear the allegations and evidence of the plaintiff, and render judgment as the right shall appear."

And by the 70th section of said chapter it is further provided that "where the defendant does not appear, and judgment is rendered against him in his absence, the justice shall

set aside the judgment within fourteen days thereafter, on motion of the defendant and payment of costs. But of such motion reasonable notice must be given to the plaintiff, his agent or attorney; and the judgment shall not be set aside unless the defendant makes oath that he has a lawful defence to the action, or is entitled to some credit, set-off, or counter claim, which has not been allowed him, and shows by his own oath or otherwise, reasonable cause why he did not appear. When the judgment is so set aside the justice shall set a day for the trial, of which the plaintiff, his agent, or attorney, if not present, must have at least three days' notice."

By section 71 of said chapter it is further declared that "at the time appointed for the hearing, if a jury be not demanded by either party, the justice shall hear the proofs and give judgment as the law and evidence shall require; and by section 72, "Either party to a civil action before a justice, when the value in controversy, or the damages claimed, exceed twenty dollars * * * shall be entitled, under the regulations herein prescribed, to a trial by six jurors if demanded."

When a jury has been empanelled they are required to be sworn by the justice "well and truly to try the matter in difference between the plaintiff and defendant;" and a true verdict give according to the evidence.

It will be observed that the form of this oath presupposes that the parties have by their pleadings come to "issue," for the jury is sworn well and truly to try the "matter in difference,"—that is to say, the "issue," between the plaintiff and defendant.

The words "matter in difference between the plaintiff and the defendant," as used in this oath, are identical in signification with the terms used in the ancient writ of *venire facias*, which described the issue for the trial of which the jury was ordered to be summoned, for, as we have already seen, after particularly setting forth the pleadings whereby the parties came to issue, it designated the issue to be tried as the "matter in variance between the plaintiff and defendant," for the trial of which they had put themselves upon that jury. The jury are sworn not only well and truly to try the "matter in

difference" between the plaintiff and defendant, but they are to give a "true verdict" according to the evidence.

The term *verdict* at common law necessarily imports that there has been an "issue" between the parties, for without an issue there could be no *verdict*, for by every *verdict* the jury declares that they have "found the issue" for the plaintiff or for the defendant, (2 Black. Com. 377;) so that whether it be called an "issue," or the "matter in difference," or the "matter in variance," between the parties, it is wholly immaterial.

Without an issue of fact, it would be an absurdity for the jury to declare they have found for the plaintiff or defendant what in fact never existed.

When the jury in an action before a justice has rendered its verdict, unless he shall believe the same was procured by fraud or undue means, or to be the result of partiality or prejudice, or to be manifestly contrary to law or the evidence, he is authorized, within twenty four hours after the return of such verdict (Sundays excepted), on motion of the injured party, to set it aside and award a new trial. Sec. 91, ch. 50, Code.

Considering said sections 71, 72 and 91 together, I can not resist the conclusion, that they necessarily presuppose that both parties are present at the time the jury is demanded, or at least that the defendant has appeared and made defense, out of which an issue of fact has been evolved, which entitles either party to have that issue tried by a jury.

There can be no doubt that if the defendant, being summoned fail to appear and make defence, the justice, at the expiration of one hour after the time fixed for the trial, may, and if not engaged in the trial of some other cause, he is required to proceed to hear the allegations and evidence of the plaintiff, and render judgment as the right shall appear.

In such case the justice, upon notice to the opposite party, and for good cause shown, may within fourteen days thereafter set such judgment aside and award the defendant a new trial, when he will be let in to a full defence to the action. And where the defendant has appeared and made defence, the matter in difference between them, unless a jury be demanded, may still be tried by the justice, whether

the defendant be present at the trial or not, subject to the right of the defendant to have such judgment set aside for good cause shown, within the time and upon the terms mentioned in section 70 of the same chapter.

But where the case has been properly tried by a jury of six, and a verdict rendered, the justice can only set the same aside within the twenty four hours after the return of such verdict (Sundays excepted), upon the motion of the party injured; and if not so set aside, the judgment rendered thereon becomes final and irreversible.

Upon the assumption that a plaintiff has in all cases the right to have his case tried by a jury whether there has been an issue in the case or not, I can not conceive of any judicial proceeding better calculated to place the property of a defendant at the mercy of the plaintiff, when for any cause the defendant has failed or been prevented from attending at the place set for the trial on the return day of the summons.

Less than seven days will amply suffice for a plaintiff in strict compliance with the letter of the statute to deprive a defendant it may be of a large portion of his estate; and if the construction contended for by the defendant in error be correct, a defendant will in such case be without remedy.

It is contended that unless these several sections of the Code to be so construed as to permit a plaintiff at his pleasure to work out a result so disastrous to the defendant, the provision of section 13 of art. 3 of the Constitution, which declares that " no fact tried by a jury shall be otherwise reexamined in any case than according to the rules of the common law," will in cases before a justice be rendered inoperative.

Guided by these rules of the common law, I have shown that until an issue of fact was made by the pleadings between the plaintiff and defendant, no *venire facias* ever could be issued; that until such an issue was so made, there was absolutely nothing which could be submitted to a jury for its consideration; that no jury could be empanelled and no case could be tried by a jury until there had been an issue made by the pleadings of the parties, and that such issue must appear by the record; that the court had no right

41

to make up the issue, and then impanel a jury to try it, but the parties themselves must first come to an issue, and then it may be tried by a jury, and that when a jury has been empanelled and the case tried without an issue, such trial is in law *no trial by a jury*, and therefore no fact considered or passed upon in such a trial can be held to have been *tried* by a *jury.*

To adopt the construction contended for by the defendant in error requires all these rules to be disregarded.

I admit that in any suit at common law before a justice when the defendant has appeared, and by his answer, either oral or in writing, has denied the plaintiff's complaint or some part thereof, or has made a statement of facts constituting a defence or counter-claim against the same; whether he be present or absent at the trial, the plaintiff may, if he requires it, have the cause tried by a jury, and that from a judgment entered on the verdict of such a jury, if not set aside in the manner prescribed in section 91 of chap. 50 of the Code, he is not entitled to an appeal therefrom, and the same, however erroneous, is final and irreversible.

But it is equally clear that in all cases where the defendant has not so appeared and answered, he may if otherwise entitled thereto appeal from such judgment upon the terms prescribed by sections 163 and 164 of said chapter, and that he is not debarred from obtaining such appeal, because the plaintiff in such case has improperly been permitted by the justice to have the case tried by a jury, and that in such case he is not precluded from his appeal by anything contained in said section 13 of art. 3 of the Constitution.

It is however insisted that although the plaintiff may have no right to a jury for the trial of his *right of action*, yet in analogy to the proceeding in common law actions in courts of record he is entitled to a jury to inquire of his damages.

To this, two sufficient answers may be made; first, that in proceedings before a justice, there can be no judgment by default; there can not be an inquiry of damages separate from the trial of the cause of action, as well as the *quantum* of damages. Having no authority to award a writ of inquiry, he can not empanel a jury to execute it. In every case, if there be no issue, he must hear and determine the whole

controversy. If there be an issue, and a jury is demanded by either of the parties, the whole case must be submitted to the jury on the trial of such issue.

I will now inquire what right the plaintiff had by the common law, where he had obtained against a defendant a judgment for his damages by default.

In all actions of *assumpsit, covenant, case, trespass* and *replevin*, the judgment by default was merely interlocutory, the sole object of these actions being to recover damages, the plaintiff's *title* to damages, was thereby established, but the amount of the damages yet remained to be ascertained. This was generally done by a writ of inquiry, but as this inquest was merely for the purpose of informing the conscience of the courts, the court itself could in all cases, if it pleased to do so, assess the damages, and thereupon give final judgment.

In executing a writ of inquiry, as the defendant, by suffering judgment by default, admits that the plaintiff has a cause of action as stated in his declaration, all the plaintiff has to prove, or that the defendant was allowed to dispute, was the *amount* of the damages. *Brill* v. *Neale*, 1 Chitty R. 619; 2 Saun. Pl. and Ev. 218; *Hewett, &c.,* v. *Mantell*, 2 Wils. 372; *Bruce* v. *Rawlins*, 3 Wils. 61, 2 Wils. 244. In 2 Wilson, *supra*, Chief Justice Wilmot said, " This is an inquest of office to inform the conscience of the court, who, *if they please*, may themselves assess the damages; " and the same was again announced by the same distinguished Judge in *Beardmore* v. *Carrington*, 2 Wilson 244, where he said, " There is a difference between a principal verdict, and a writ of inquiry of damages, the latter being only an inquest of office to inform the conscience of the court, and which they might have assessed themselves without any inquest at all.

This rule of the common law in relation to the execution of writs of inquiry was in force in Virginia long before, and at the time of the revolution, and so continued until it was changed by the 42d section of an act passed by the general assembly on the 12th day of December, 1792, which declared that " All judgments by default for want of an appearance, or special bail, or pleas, as aforesaid, and non-

suits and dismissions obtained in the office, and not set aside on some day of the next succeeding District Court, shall be entered by the clerk as of the last day of the term ; which judgment shall be final in actions of debt founded on specialty, bill or note in writing, ascertaining the demand, unless the plaintiff shall choose, in any such case, to have a writ of inquiry of damages, and in all other cases the damages shall be ascertained by a jury, to be empanelled and sworn to inquire thereof." Collection of Acts, 1803.

This statute continued in force until the revisal of 1819, when the provision, in the act of 1792 requiring the writ of inquiry to be executed by a *jury*, was omitted from the Code, thus leaving the writ to be executed as it was before the passage of the act of 1792 until restored by sec. 5, ch. 177 of Code of 1849.

I have shown that without an issue there was no right to a trial by a jury; and that even where there was a judgment against the defendant by default, and a writ of inquiry of damages properly awarded, neither plaintiff nor defendant had the right to have the damages assessed by a jury, for the court itself, if it saw proper to do so, might assess such damages; so that, according to the rules of the common law, neither party, in the absence of an issue of fact, had the right to a trial by a jury; nor did they have the damages assessed by a jury, when a writ of inquiry for that purpose was properly awarded, and not having rights according to the common law, they were *neither preserved* nor granted by section 13 of art. 3 of the Constitution.

When the plaintiff in this case was about to institute his common law action against the defendant for the recovery of damages, he had the right to select the court in which to prosecute it. For reason satisfactory to himself, he declined to bring it in the Circuit Court, where his right to a trial by jury under all circumstances was guaranteed to him by the law of the land and the practice of the court.

He elected to bring his action before a justice of the peace, before whom he was also entitled to a trial by a jury, in every contingency save one, and that was in the event the defendant should fail to appear and resist his demand. Having selected this tribunal, he to that extent voluntarily

waived his right to a trial by a jury, which he had the right to do, and for this the defendant was in no manner responsible. The defendant had no election. He was obliged to submit to the lawful jurisdiction of the justice before whom it was cited to appear.

By failing to appear the defendant left the plaintiff at liberty to take against it judgment for any amount he might be able to prove he was entitled to recover; the plaintiff was deprived of no right what he had voluntarily waived, and he has no reason to complain, that in getting all he was entitled to demand, he was unable to deprive the defendant of its right to appeal from his judgment.

I am therefore of opinion that the pretended trial of this cause by a jury was wholly unauthorized by law, and that it was in law *no trial* by *a jury;* that the verdict rendered upon trial is not conclusive of any fact thereby found; that the defendant is entitled to an appeal from the judgment rendered thereon; that said judgment possesses no greater legal effect than would a judgment of the justice against the defendant where it failed to appear; that when a defendant in a common-law action before a justice fails to appear and make defence to the action it is the duty of the justice to hear the cause and render judgment thereon; that no jury can be empanelled and no case tried by a jury until there has been an *issue* in *fact* made by the pleadings of the parties, and that where a common-law action before a justice has been tried by a jury without such issue of facts, such pretended trial is in contemplation of law no trial by a jury, and no fact considered or passed upon in such trial can be held to have been tried by a jury.

I am therefore of opinion that the judgment of the Circuit Court dismissing said appeal should be reversed.

AFFIRMED.