# Richmond.

## H. H. LACKEY v. JOHN A. PRICE, ET ALS.

### May 28, 1925.

1. ASSUMPSIT—*General Issue—What May be Shown under—Case at Bar.*—
The instant case was an action of *assumpsit* to recover from defendant
four hundred dollars, alleged to have been advanced him as an accom-
modation by plaintiffs. Defendant asserted that the money was an
advance payment on lumber he had agreed to saw and deliver for a
proposed church of which plaintiffs were members, that the construc-
tion of the church was abandoned and that the chairman of the build-
ing committee told him to go ahead and sell the lumber, which he did,
at a loss of more than four hundred dollars, and, therefore, he owed
the plaintiffs nothing.
    *Held:* That this defense was admissible under the general issue, there
    being no attempt by defendant to set up a claim against plaintiffs, but
    only to show that defendant owed plaintiffs nothing.

2. CONTRACTS—*Breach of Contract—Evidence—Witnesses—Transaction with
Deceased Person—Section 6209 of the Code of 1919.*—In an action of
*assumpsit*, defendant attempted to prove by two witnesses certain
statements of members of a church building committee, one of whom
was apparently accepted on all sides as chairman, and both of whom
were dead, to the effect that they said it was impossible to build the
church for which defendant had a contract to saw the lumber, and
that they and their associates in the enterprise had so advised de-
fendant, and instructed him to sell the church lumber for the best
price available. The court refused to receive this evidence, and also
to allow defendant to show his loss and damage from the abandon-
ment of the enterprise and the sale of the lumber.
    *Held:* That under section 6209 of the Code of 1919, this evidence was
    admissible.

3. WITNESSES—*Declaration of Deceased against Interest.*—The declarations
of a decedent made in connection with the matter in litigation, and
against his interest, are admissible as evidence to go before the jury.

4. JOINT ENTERPRISE—*Chairman of Committee—Estoppel to Repudiate Acts
of Chairman.*—Where a number of persons combine to accomplish a
common purpose, and, as such, agree upon a certain member of the
combination to be its chairman and act as its head in dealing with
third parties, all of those so agreeing are bound by the acts of the

chairman, so long as he does not transcend the powers for which the committee was brought into existence. They are estopped from repudiating the acts of their own agent in furtherance of the common purpose.

5. DECLARATIONS AND ADMISSIONS—*Declaration of Deceased Person—Chairman of Committee—Question of Law and Fact.*—Whether the chairman of an alleged building committee of a church, since deceased, made certain statements in regard to the abandonment of work on the church, and notification thereof to defendant, and whether he was acting within the scope of his powers in authorizing defendant to abandon a contract with the committee to saw lumber for the church and sell the lumber, if such were the established facts, are questions for a jury under proper instructions.

6. DECLARATIONS AND ADMISSIONS—*Community of Interest.*—A community of interest or design will frequently make the declarations of one the declarations of all.

7. INSTRUCTIONS—*Overlooking Party's Theory of the Case.*—An instruction for plaintiff which entirely ignores the theory of defendant is erroneous.

8. PLEADING—*Admissions in Pleadings—Estoppel.*—Where in their declaration plaintiffs alleged that they were appointed a committee by a church to purchase certain lumber for a chapel they cannot afterwards be heard to say that they were not the building committee of the church.

9. CONTRACTS—*Breach of Contract—Instructions—Case at Bar.*—Where plaintiffs were suing defendant, and asking to recover from him money paid or loaned on account of a contract having to do with cutting lumber for a church and claiming that defendant had broken this contract, defendant was entitled to an instruction telling the jury in substance that if they believed the plaintiffs made a contract with defendant to cut the lumber for the construction of the chapel, and paid the defendant four hundred dollars on account of the purchase price of the lumber; and further believed the defendant cut the lumber, or the greater part thereof, and while working on the contract was stopped by some person or persons authorized to speak for the plaintiffs and was further told that the construction of the chapel had been indefinitely postponed, or abandoned, they should find for the defendant.

Error to a judgment of the Circuit Court of Mecklenburg county in an action of *assumpsit.* Judgment for plaintiffs. Defendant assigns error.

*Reversed and remanded.*

The opinion states the case.

*Hudgins & Ozlin* and *Sterling Hutcheson,* for the plaintiff in error.

*Irby Turnbull,* for the defendants in error.

McLEMORE, J., delivered the opinion of the court.

In the trial court the defendants here were the plaintiffs there, and they will be similarly referred to in this opinion.

In the spring of 1920 John A. Price, H. H. Lackey, T. W. Baxter, J. S. Wilson, J. W. Lenhart and W. A. Bess, calling themselves a building committee from Bess chapel, entered into an agreement with H. H. Lackey, who was at the time operating a saw mill, and himself one of the said building committee (though not a member of the church) for the purchase of 23,000 feet of lumber at $40.00 per thousand to be used in the construction of a church or chapel at some point not yet definitely decided upon,

As to how much of this lumber was actually sawed by the defendant there is a decided conflict in the testimony. There is also considerable uncertainty as to whether the defendant was to deliver the lumber on his yard at the mill, or at the place where the chapel was to be constructed.

At the time the verbal agreement was made with reference to furnishing the lumber, defendant testified the understanding to be that this committee or some one for them must advance $400.00 on the purchase price, which they agreed to do, and that he would wait on them for the remainder of the bill, estimated to be something over $450.00. Plaintiffs' contention on this point

is that the $400.00 was an accommodation advance, based upon defendant complying with his contract to cut and deliver the lumber and was in no sense a payment. ⬛⬛⬛

This $400.00 was raised by the execution of a note signed by T. W. Baxter, O. E. Lenhart, N. J. Lenhart and J. W. Lenhart, and endorsed by H. H. Lackey, John A. Price, G. T. Wilson and J. S. Wilson, all members of this church save defendant. T. W. Baxter seems to have chiefly conducted negotiations with the Peoples Bank and Trust Company whereby the note was negotiated and the money thus obtained turned over to the defendant.

For reasons not very clearly established this church was not built, and the defendant contends its construction was abandoned by the committee, and that it, speaking through the same party (its chairman), who contracted with him to cut the lumber in the first instance, notified him the church could not be built, and that both T. W. Baxter and W. A. Bess told him to "go ahead and sell the lumber, that it was impossible to build the church, and on this instruction from the chairman of the building committee and Baxter, the witness sold the lumber."

Defendant sold the lumber cut for the church in the open market for $24.00 per thousand and now contends that the payment to him of $400.00 was on account of the purchase price of the lumber, which they afterwards declined to accept, and that the action in the circuit court against him as a result of the failure of the makers and endorsers of the $400.00 note negotiated in the bank should not have been maintained, as his loss in selling the lumber for $24.00 was more than the $400.00 advanced to him in the beginning.

The note in the bank was finally paid by all the

makers and endorsers in equal proportions, and the plaintiffs brought this action of *assumpsit* against the defendant for $400.00. In this declaration there were the common counts, and a special count in which was set out the contract on the defendant's part to cut the lumber, and also that they advanced him the sum of $400.00 to enable him to cut the lumber and comply with his contract which he failed to do.

The special pleas in addition to the general issue were filed, but the special pleas were subsequently withdrawn and the case went to the jury on the general issue alone.

It is contended by the plaintiffs' counsel that defendant could not prove any damages sustained by reason of the failure of the plaintiffs to accept the lumber at $40.00 per thousand feet, as no evidence could be introduced to sustain this damage under the plea of general issue. With this contention we cannot agree, for while he cannot recover over damages as such from the plaintiffs under the plea of *non assumpsit*, he may, if he can, show that nothing is due the plaintiffs.

The defendant's contention was that he did not owe plaintiffs anything. That the note was signed by him as an accommodation to plaintiffs to enable them to raise the cash payment on the lumber. That plaintiffs, or some of them, signed the note and others endorsed it. That the money thus raised was turned over to him as part payment for the lumber, which he had cut or was ready to cut as soon as the $400.00 was paid to him, as specified in the agreement, and therefore he owed them nothing, they having breached the contract and not he. The grounds of defense clearly indicate this to be the theory upon which the case was tried.

There was no attempt to set up a claim against plai n tiffs, but only to show that defendant owed them not .h ing. This can be done under the general issue.

"Anything that shows there is no existing debt due. The statute of limitation, bankruptcy and tender, are believed to be the only defense that may not be proved under this plea." Burks Pl. & Pr. (2nd ed.), page 142.

Upon a trial of the case the jury found for the plaintiffs the sum of $360.32 (arrived at by deducting from the $400.00 the amount paid to the bank by the defendant as one of the endorsers).

There were numerous exceptions taken during the trial, both to the evidence excluded and to the instructions given and refused. These are embodied in eight assignments of error, and will be considered in their order.

[2] 1st assignment: "1. The court erred in refusing to permit the defendant to prove the amount he obtained from the sale of the lumber, and to show the loss and damage sustained by him by reason of the difference between the market value thus obtained and the contract price of the lumber to which he was entitled under the bargain between himself and the plaintiffs."

2nd assignment: "2. The court erred in refusing to permit your petitioner's wife to testify that she had heard a member of the committee say it was impossible to build the church, that they would have to pay for sawing the lumber anyway, that your petitioner should go ahead and sell the lumber elsewhere, and that the church could not be built as originally planned.

3rd assignment: "3. The court erred in refusing to permit Mrs. W. A. Bess (whose deceased husband was chairman of the building committee, and who is a sister of T. W. Baxter, another deceased member of the committee), to testify that she heard her husband and her brother say that it was impossible to build the church, and that they had instructed your petitioner to sell the lumber elsewhere."

As these three assignments are closely related and depend upon each other, they will be considered together.

Defendant attempted to prove by his wife and by Mrs. Bess, widow of W. A. Bess, deceased (who has died since the negotiations originated), apparently accepted on all sides as chairman of the building committee, certain statements made by decedent and by T. W. Baxter, also deceased, that they had said it was impossible to build the church, and that they and their associates in the enterprise had so advised the defendant, and had instructed him to sell the church lumber for the best price obtainable. This evidence the court excluded from the jury's consideration and is the subject of the 2nd and 3rd assignments of error.

Virginia Code, 1919, section 6209, provides:

"If one party incapable of testifying, testimony of other party to be corroborated; when memoranda, etc., of an incapable party to be received in evidence. In an action or suit by or against a person who, from any cause, is incapable of testifying, or by or against the committee, trustee, executor, administrator, heir, or other representative of the person so incapable of testifying, no judgment or decree shall be rendered in favor of an adverse or interested party founded on his uncorroborated testimony; and in any such action or suit, if such adverse party testifies, all entries, memoranda, and declaration by the party so incapable of testifying made while he was capable, relevant to the matter in issue, may be received as evidence."

In the revisors notes appended to this section is the following:

" 'It was believed that this section, together with the great safeguard of cross-examination, would be ample protection for the estates of persons laboring under disability or who are incapable of testifying. In the busi-

ness affairs of life all evidence bearing upon the question at issue is received and considered by the business world, and it seemed proper that the same rule should obtain in courts of justice which are enforcing rights arising out of such business transactions.' "

[3] In the recent case of *Bear's Adm'r* v. *Bear*, 131 Va. 447, 109 S. E. 313, Judge Burks deals with the question here involved, and holds the declarations of a decedent made in connection with the matter in litigation and against his interest, are admissible as evidence to go before the jury.

In the light of the statute, section 6209, and of the decisions bearing thereon, we think the statements of T. W. Baxter should have been admitted. The statements claimed to have been made by Baxter come under the direct influence of the statute last referred to, Baxter being a party to the suit through Mrs. Baxter, administratrix. This was clearly a statement against the interest of T. W. Baxter, deceased, the party who it is claimed made it, and his personal representative is one of the plaintiffs' attempting in this suit to sustain a judgment against the defendant.

The statements of Bess, the chairman of the committee that negotiated with Lackey for the lumber as the committee's representative, were proper evidence for the jury in support of defendant's contention that the committee abandoned the construction of the church and authorized him to sell the lumber for the best price obtainable. This being one of the major issues in the case, the statements of the principal actors connected therewith are legitimate evidence for the jury's consideration.

[4] While the building committee may be a self constituted organization without legal status, yet we think that where a number of persons combine to accomplish

a common purpose, and, as such, agree upon a certain member of the combination to be its chairman and act as its head in dealing with third parties, all of those so agreeing are bound by the acts of the chairman, so long as he does not transcend the powers for which the committee was brought into existence. They are estopped from repudiating the acts of their own agent in furtherance of the common purpose.

[5] Whether the chairman of the committee made the statements as contended for by the defendant, and whether he was acting within the scope of his powers in authorizing the defendant to abandon the contract and sell the lumber, if such are established as facts, are questions for a jury under proper instructions.

In *Claytor* v. *Anthony*, 6 Rand. (27 Va.) 285, it is said:

[6] "It is laid down in many cases that a community of interest or design will frequently make the declarations of one the declarations of all." (Stark. on Ev. 44.)

We think there was prejudicial error in excluding the evidence of Mrs. Bess and Mrs. Lackey covered by assignments No. 2 and No. 3, and that the judgment should be reversed and the case remanded for a new trial.

[7] We are also of the opinion the trial court should have submitted to the jury the defendant's theory of the case, by proper instructions. We think, too, that the one instruction given at the instance of the plaintiffs is erroneous in that it authorized a recovery from the defendant provided the lumber sawed for the church was thereafter sold by the defendant. This instruction entirely ignored Lackey's contention that he was authorized to sell the lumber by the chairman of the building committee, and was directed to do so by both the chairman and by T. W. Baxter, deceased.

In the brief of plaintiffs' counsel it is asserted that plaintiffs are not bound by the acts of the building committee for the reason that the personnel of the |two are entirely different.

[8] Assuming for the moment that those who joined forces and resources to finance the work of providing the lumber, were not thereby bound as an organization or partnership for the attainment of an agreed objective, they cannot now be heard to say they are not the building committee, for in their declaration which is the basis of this action, they allege: "And for this also, that heretofore, to-wit, in October, 1920, the said plaintiffs, together with the said defendant, were appointed a committee by the congregation of Bessie's chapel, a church conducted in Mecklenburg county, Virginia, to purchase certain lumber for the chapel, and the said defendant offered to furnish the said lumber, and thereupon an agreement was made between the plaintiffs on the one hand and the defendant on the other, etc."

[9] This committee as plaintiffs, are now suing the defendant, and are seeking to recover from him the money paid or loaned on account of this original contract having to do with cutting the bill of lumber for the church. They are claiming that he entered into a binding contract with them which he has broken, and which gives them a right of action against him. It is not a case where the committee is being sued to enforce a claim or collect a debt, but where it has admittedly made a contract and paid or advanced a large part of the cash consideration, and is now invoking the aid of the court to place them in *status quo*, by making the other party pay back to them the money they knowingly and willingly paid to him. The instructions of the trial court were based upon the plaintiffs' theory of the case, and for all practical purposes directed a verdict against Lackey.

We are of the opinion that an instruction should have been given for the defendant, telling the jury, in substance, if they believe the plaintiffs made a contract with defendant to cut the lumber for the construction of the chapel, and paid the defendant $400.00 on account of the purchase price of the lumber; and further believe the defendant cut the said lumber, or the greater part thereof, and while working on said contract was stopped by some person or persons authorized to speak for the plaintiffs and was further told that the construction of the chapel had been indefinitely postponed, or abandoned, they should find for the defendant.

A discussion of assignments of error 4 and 5 is unnecessary further than to say we think them without merit.

*Reversed and remanded.*