# Wytheville

R. L. MILES, JR. v. FRANKLIN H. ROSE

and

R. L. MILES, JR. v. HAROLD HODGES.

June 14, 1934.

Present, All the Justices.

The opinion states the case.

*W. R. Ashburn,* for the plaintiff in error.

*K. L. Woody* and *Archer L. Jones,* for the defendants in error.

Epes, J., delivered the opinion of the court.

These two cases are actions of trespass on the case instituted in the Corporation Court of the city of Hopewell. In one of them Franklin H. Rose is the plaintiff and in the other Harold Hodges is the plaintiff. The same

persons were defendants in both cases. They both arose out of a collision between two automobiles which occurred on August 31, 1930, in the intersection of Arctic avenue and Nineteenth street in the town of Virginia Beach, in Princess Anne county, Virginia.

The following undisputed facts appear from the evidence: Arctic avenue runs north and south; Nineteenth street runs east and west; and the angles made by the paved portions of the two streets are practically right angles. The paved portion of each street is sixteen feet wide, and the collision occurred in the northwest quarter of the area lying within the intersection made by the paved portions of them.

The car in or on which the plaintiffs were riding was a model A Ford roadster, which was owned by and being driven by T. E. Denton. It was going west on Nineteenth street. The other car was being driven by R. L. Miles, Jr., who was and is a resident of the city of Norfolk. It was going south on Arctic avenue.

Bushes and weeds from eight to ten feet high were growing in the northeast angle made by the intersection of the paved portions of the streets. All the witnesses agreed that these bushes and weeds constituted an obstruction to the view of a person in either car. The plaintiffs testified that they shut off their view of Arctic avenue to the north of the intersection until they were within twenty feet of the intersection. Miles testified that they cut off his view to the east along Nineteenth street until he was almost in the intersection.

The automobile driven by Miles belonged to J. S. Barr of Philadelphia, Pa., who was spending the Labor Day holiday with Miles in Norfolk. Early in the afternoon Barr and Miles had driven from Norfolk to Virginia Beach in Barr's car. Later in the afternoon Miles, with Barr's consent, took the automobile to take a Miss Griffith for a drive, and at the time of the collision she and Miles were the only persons in the automobile.

Five persons were riding in and on the Denton car.

Denton was seated on the left driving. James E. Cuddihy (age 19) and Harold Hodges (age 17) were sitting on the seat with him, Cuddihy in the middle and Hodges on the right. Franklin H. Rose (age 20) was standing on the right running board and Walter Mathias was standing on the left running board. There is, however, no evidence which tends to show that the fact that the number of persons in the car or their respective positions in or on it was a proximate cause of the collision or of the injuries received by either Rose or Hodges.

Denton, Rose, Hodges and Cuddihy resided in the city of Hopewell at the time of the collision and when these actions were brought. They were friends, or at least acquaintances, who were spending the Labor Day holiday at a tourist camp at Virginia Beach. About five p. m. these four left the tourist camp in Denton's automobile to go to get some whiskey for the use of themselves and some of their friends, or, as one of them testified, "to take on a party." Throughout this trip Denton did all the driving. They went first to the bath house for Denton and Hodges to change from their bathing suits to their ordinary clothes. From there they went to a filling station to inquire where they could get whiskey. At the filling station they met Mathias, who agreed to go with them and show them where it could be acquired. After Mathias joined them they drove about two miles into the country, where they purchased a gallon jug of whiskey. They were on their way back to camp with the whiskey in the car when the collision occurred. While it is not expressly so stated by any of the witnesses, the fair inference from the testimony is that Denton, Rose, Hodges and Cuddihy were all interested in and contributed to the purchase of the whiskey. But the testimony is that they had not drunk any of the whiskey; and there is no testimony in the record to show that either they, Denton or Miles had taken a drink that day.

Rose and Hodges were seriously injured in the collision. Miles received a blow on his head from which he was in

the hospital eight days; and Miss Griffith and Mathias suffered minor injuries. The record does not show whether Denton was injured or not.

Rose had his left leg fractured about six inches above the ankle and his right leg fractured and crushed from about six inches above the ankle down to and including the upper part of the ankle joint. His left hand was badly lacerated. He had a severe laceration about the right eye, and was knocked unconscious. At the time of the trial his legs were still weak, ached in rainy weather, and if overtaxed they swelled up and made him limp. One knee joint was still so much affected by the injury to the lower part of the leg that if any strain was placed upon it, it slipped out of joint. He was in the hospital nine weeks, during which time his hospital bill was $6 a day (a total of $378), in addition to charges for X-ray and other expenses; and his doctor's bill was $300. His father paid the hospital expenses and a part of the doctor's bill. A part of the doctor's bill remained unpaid at the time of the trial, but the record does not show how much.

Hodges had his skull fractured, his right leg broken above the knee, and his right ankle fractured and was unconscious for two weeks after the accident. At the time of the trial he was still suffering from "very severe headaches sometimes from the fracture of my skull," had "a limp in" his right leg, and suffered with his leg "very much." He was in the hospital about nine weeks. His hospital and nursing bills amounted to about $600, and his doctor's bills to $375. His father paid "the hospital bill and a part of the doctor's bill;" but the record does not show how much was left unpaid.

On August 21, 1931, almost a year after the collision, Rose and Hodges, each suing by his father as his next friend, filed their separate actions in the clerk's office of the Corporation Court of the city of Hopewell. The memorandum in both actions directed the issuance of process in an action of trespass on the case against T. E. Denton,

R. L. Miles, R. L. Miles, Jr., and J. S. Barr, for $10,000 damages.

On the same day two subpoenas, addressed to the sergeant of the city of Hopewell, issued in each action against all four defendants. One of them was sent to the sergeant of the city of Norfolk and was served in that city upon R. L. Miles on August 26th and on R. L. Miles, Jr., on August 27, 1931. The other was delivered to the sergeant of the city of Hopewell, and on August 28, 1931, was served upon T. E. Denton in that city. No service was had, or so far as the record discloses, was attempted to be had on Barr.

The declarations filed in the two causes are practically identical except as to the name of the plaintiff and the allegations as to the injuries received by him. Though each declaration begins the plaintiff "complains of T. E. Denton, R. L. Miles, R. L. Miles, Jr., and J. S. Barr, of a plea of trespass on the case, for this, to-wit," neither alleges or purports to allege any cause of action against R. L. Miles and before the jury was sworn the cases were dismissed as to him.

Each declaration contains only one count. The allegations of that count are that J. S. Barr and R. L. Miles, Jr., were the owners of and were operating an automobile which was going south on Arctic avenue; that T. E. Denton was the owner and operator of an automobile going west on Nineteenth street; that "the said defendants, and each of them * * * so carelessly, recklessly and negligently drove and operated their said automobiles that the automobile * * * being driven and operated by the said J. S. Barr and R. L. Miles, Jr., and the automobile * * * driven and operated by the said T. E. Denton * * * collided with each other;" and that "as a direct and proximate result of the * * * negligence of the said defendants, and each of them" the plaintiff was injured.

Denton made no appearance, filed no pleadings, was not present at the trial, and no testimony given by him was introduced in evidence.

The defendant R. L. Miles, Jr., appeared in each case, demurred to the declaration, asked that the plaintiff be required to file a bill of particulars, and pleaded the general issue, that the plaintiff was guilty of contributory negligence in that he himself was guilty of negligence which contributed to causing the collision, and in "that he was engaged in a joint enterprise with the driver of said car (Denton) and assumed equal responsibility so that the driver's negligence is imputable to him." In his plea of contributory negligence he inferentially pleads that Denton was guilty of negligence which contributed to causing the collision, though he does not expressly so allege.

While it is not entirely clear whether the court and counsel understood that the case was being tried as to both Denton and Miles or only as to Miles, upon a consideration of the whole record we are of opinion that it is properly considered as having been tried only as to Miles, and that this was done without objection from him.[1]

By consent of the plaintiffs and Miles both cases were submitted to the same jury, on the same evidence and upon the same instructions.

The plaintiffs introduced only three witnesses, *i. e.,* themselves and their companion Cuddihy. The defendant testified in his own behalf and introduced a number of witnesses, including Miss Griffith and Walter Mathias.

We shall not recite the evidence bearing on the question of whose negligence was responsible for the collision, but shall state our conclusions thereon in dealing with the several assignments of error.

At the conclusion of the plaintiffs' evidence the defendant Miles moved the court to strike out all the plaintiffs' evidence because there was no evidence to support a verdict finding that he was guilty of any negligence which was a proximate cause of the collision. The court

---

[1] See, in this connection, section 6264, Code Va. 1919, and *Cunningham* v. *Sayre,* 21 W. Va. 440, at p. 442.

overruled this motion but the action of the court in so doing is not assigned as error.

After all the evidence had been introduced the defendant Miles again moved the court "to strike out all the testimony for the plaintiffs" on the same grounds as to its sufficiency as it thereafter moved the court to set aside the verdict and enter judgment for him. This motion the court overruled.

The court gave a number of instructions for both the plaintiffs and the defendant, but we need notice here only four of them.

At the request of the plaintiffs it gave instruction B, which reads:

"The court instructs the jury that if they believe from a preponderance of the evidence in this case that the defendant operated his car at an excessive rate of speed, or that the defendant failed to keep his car under complete control, or that he had failed to keep a proper lookout, or that the defendant violated the provision of the right of way laws, as set forth in instruction No. B-1, and that the failure to observe any of the foregoing provisions was the proximate cause of the injuries complained of and that the plaintiff was not guilty of contributory negligence, then you will find a verdict for the plaintiff."

Miles objected to the giving of instruction B because there was no evidence to support it, and because it "ignores entirely the doctrine of imputed negligence and a joint enterprise," but the giving of this instruction is not assigned as error.

The defendant Miles asked the court to give instructions Nos. 6, 7 and 8. The court gave instructions 7 and 8 in the form in which they were tendered, but, over the objection of Miles, it inserted in instruction No. 6 the words "solely due to," which we have italicized. These instructions as given read:

"No. 6: The court instructs the jury that if they believe from the evidence that the proximate cause of the

injury suffered by these plaintiffs was *solely due to* the negligence of the driver of the car in which they were riding, then they should find for the defendant R. L. Miles, Jr.

"No. 7: The court instructs the jury that if they believe from the evidence that defendant R. L. Miles, Jr., was guilty of negligence which was a proximate cause of the accident, yet, if they further believe from the evidence that the driver of the Denton car was likewise guilty of negligence contributing to the accident, and that at the time thereof the plaintiff and said driver were using the automobile for their mutual pleasure and advantage, and were engaged in a joint enterprise, then any negligence of the driver is imputable to the plaintiffs, and if it in the slightest degree contributed to the accident and injuries to the plaintiff, or either of them, such one cannot recover of the defendant R. L. Miles, Jr.

"No. 8: In connection with instruction No 7 the court instructs the jury that a joint enterprise is an undertaking or enterprise entered into by two or more persons for their mutual pleasure and advantage, where each has some voice in the route to be taken, the time to be devoted to the ride and the manner of conduct of the enterprise and automobile by suggestions in these particulars."

Miles objected to the motion of the court in amending instruction No. 6 as originally asked for, "because said instruction as amended was very misleading in that it inferentially told the jury that irrespective of the doctrine of joint enterprise, imputable negligence, or even contributory negligence of the plaintiffs themselves, yet they were entitled to recover unless their injuries were solely due to the negligence of the driver of the car in which they were riding."

The plaintiffs objected to the giving of instructions 7 and 8 on the ground that the evidence was insufficient to support a verdict finding that the plaintiffs and Denton

were engaged in a joint enterprise, because it does not show that the plaintiffs were entitled to exercise any voice as to the control, direction or operation of the automobile.

The cases were submitted to the jury on the evidence and the instructions given by the court; and in each case the jury returned a verdict for the plaintiff against R. L. Miles, Jr., for $750. Both verdicts were silent as to Denton. The defendant (R. L. Miles, Jr.) moved the court to set aside the verdicts of the jury and enter final judgments for him on the following grounds:

"1. That the said verdicts and each of them are contrary to the law and the evidence and wholly without any evidence to support them, and there is no evidence that this defendant was guilty of any primary negligence.

"2. That it is conclusively shown by the evidence that the plaintiffs, Franklin H. Rose and Harold Hodges were engaged in a joint enterprise with T. E. Denton, the driver of the car in which they were riding, as a matter of law; that it is conclusively shown by the evidence that the said T. E. Denton was guilty of negligence proximately causing or contributing to the accident out of which the injury to plaintiff arose, as a matter of law, and that the negligence of the said T. E. Denton is imputable to them and each of them as a matter of law;

"3. That it is conclusively shown by the evidence that the plaintiffs and each of them were guilty of negligence, as a matter of law, which proximately caused or contributed to their injuries."

He also moved the court that if it would not set aside the verdicts and enter final judgments for him on the grounds above stated, it would set aside the verdicts and grant him a new trial in both cases, because:

1. "The court erred in giving the jury the instructions asked for by the plaintiffs;"

2. "The court erred in refusing the instructions asked for by the defendant R. L. Miles, Jr.;"

3. "The court erred in amending certain instructions offered by the defendant R. L. Miles, Jr.;"

4. "The court erred in refusing to admit in evidence an ordinance of the town of Virginia Beach governing the right of way at street intersections."

5. "The court erred in permitting the jury to apply the doctrine of comparative negligence."

The court overruled the motion to set aside the verdict, and entered judgment in each case for the plaintiff against R. L. Miles, Jr., for $750.

In his petition for a writ of error R. L. Miles, Jr., makes seven assignments of error.

The first, second and third assignments are that the court erred in refusing to set aside the verdicts and enter judgment for the defendant (R. L. Miles, Jr.) on all or at least some one of the three grounds assigned by him in his motion. For the reasons hereafter stated we are of opinion that none of these three assignments of error is well made.

Upon an analysis of the evidence we are of the following opinions:

(1) The evidence is insufficient to support a verdict finding that either of the plaintiffs was himself guilty of negligence which was a proximate cause of the injuries received by him.

(2) While the preponderance of the evidence tends to show that R. L. Miles, Jr., was not guilty of any negligence which was the proximate cause of the collision, and that Denton was guilty of negligence which was either the sole proximate cause of the collision or, at least, a contributing proximate cause thereof, it cannot be said as a matter of law that there is no evidence to support a verdict finding that Miles was guilty of negligence which was a proximate cause of the collision.

(3) The evidence relied upon by the defendant to establish that the plaintiffs and Denton were engaged in

a joint enterprise and that Denton's negligence was imputable to them is the uncontradicted testimony of the plaintiffs themselves, and it has been heretofore stated. It is, as a matter of law, insufficient to support a verdict predicated upon a finding that the plaintiffs and Denton were engaged in a joint enterprise of such a nature as to make the negligence of Denton, if any, in the operation of his automobile imputable to the plaintiffs.

■ That the negligence of the driver in operating an automobile may be imputed to a person riding therein with him on the ground that they are engaged in a joint enterprise, it is not sufficient that they have a mutual or joint interest in the objects and purposes of the trip. There must be a joint enterprise as hereinafter defined in controlling, directing, and governing the operation of the automobile. The relationship between the parties arising from the engagement, express or implied, between them, must be such that each of them has, or is, entitled to exercise a voice as to the manner in which the automobile shall be controlled and operated while making the trip. If the relationship between the parties is such that each is entitled to exercise a voice in the control and operation of the automobile, it is not material that the one not driving does not know how to operate an automobile, or has no opportunity actually to control the conduct of the driver, or that it has been expressly agreed or is necessarily understood that he will not interfere with the driver in the control and operation of the automobile. But the engagement between the parties must have given rise to a relationship between them such that each is entitled to a voice in the control and operation of the automobile.

In the case of *Washington & O. D. Ry. Co.* v. *Zell,* 118 Va. 755, 88 S. E. 309, the court went further in applying the doctrine of joint enterprise than it has gone in any other case. The recognition in the *Zell Case* of the principle above stated is not plain; but in the later cases on

this subject it is clearly and consistently recognized.[2] *Director General* v. *Pence's Adm'x*, 135 Va. 329, 116 S. E. 351, 356; *Seaboard A. L. Ry. Co.* v. *Terrell*, 149 Va. 344, 141 S. E. 231, 235; *Gaines* v. *Campbell*, 159 Va. 504, 116 S. E. 704. See, also, Berry on Automobiles (6th Ed.) sections 644-645, and notes on this subject in 48 A. L. R. 1077; 63 A. L. R. 909, 921; and 80 A. L. R. 312.

In *Director General* v. *Pence's Adm'x, supra,* the court, speaking through Judge Kelly, who wrote the opinion in the *Zell Case,* after commenting on the *Zell Case,* says:

"But the 'joint enterprise' which will render the contributory negligence of a driver imputable to a person riding with him must invest such person with some voice in the control and direction of the vehicle. The rule is founded upon the doctrine of principal and agent. The passenger must be so related to the driver as that the maxim *'qui facit per alium facit per se'* is applicable."

To understand the full import of the opinion in *Seaboard A. L. Ry. Co.* v. *Terrell, supra,* it is necessary to have recourse to the record as the opinion does not fully state the case. In that case Eddie Carter was driving an automobile in which Helen Terrell, James Huling and Walker Twine were riding. There was evidence that the other three were simply on a pleasure ride with Carter at his invitation. But there was also evidence to support a verdict finding that the four left Richmond in search of whiskey, and that they purchased a quart and drank it before they reached the crossing at which their car collided with an engine of the railway company. In instruction No. 5 the court instructed the jury that any negli-

---

[2] See, also, the following cases in which the court held that the person riding with the driver was a guest and the negligence of the driver was not imputable to her or him: *Va. R. & P. Co.* v. *Gorsuch*, 120 Va. 655, 91 S. E. 632, Ann. Cas. 1918B, 838; *Virginian Ry. Co.* v. *Farr*, 147 Va. 217, 136 S. E. 668; *N. & W. Ry. Co.* v. *James*, 147 Va. 178, 136 S. E. 660; *Norfolk & Portsmouth Belt L. R. R. Co.* v. *Parker*, 152 Va. 484, 147 S. E. 461; and *Virginian Ry. Co.* v. *Underwood*, 152 Va. 264, 146 S. E. 277, in which it was held that the owner of the car and the person driving it were engaged in a joint enterprise, and the driver's negligence was imputable to the owner.

gence of which Carter, the driver, may have been guilty "will not be imputed to them [Helen Terrell, Huling and Twine] unless the jury believe from the evidence that *they had or exercised control over the driver,* or unless you believe from the evidence that the driver, Carter, was intoxicated or careless to such an extent as to prevent him from using ordinary care, and this condition was brought to the knowledge of the plaintiffs as defined in the 10th instruction." (Italics ours.) No objection was made to the giving of this instruction, but in commenting upon instruction 14 which incorporated instruction No. 5 therein by reference to it, the court said:

"Instruction No. 14 left to the jury the question as to whether, if Eddie Carter, the driver, was guilty of contributory negligence, such negligence should be imputed to the plaintiff. That is, it left the question as to whether the plaintiff exercised any control over the driver or whether they were engaged in a joint enterprise, in either of which events negligence of the driver would be imputed to the plaintiff (*Wash. & O. D. R. Co.* v. *Zell's Adm'r,* 118 Va. 755, 88 S. E. 309), or whether the occupants of the car, including the plaintiff, were guests of the driver, in which event negligence of the driver would not be imputed to the plaintiff. * * * All these were jury questions and the instructions submitting them to the jury correctly propounded the law. They were all answered by the jury's verdict in favor of the plaintiff's contention." * * *

In *Gaines* v. *Campbell,* 159 Va. 504, 166 S. E. 704, 707, Campbell and Miss Gaines were riding on Gaines' autocycle en route to visit mutual friends. In holding that they were not engaged in a joint enterprise the court says: "The major test, when we undertake to impute to a plaintiff the negligence of her driver, is this: Was he her agent, and did she have any control over the management of the car? Not until these facts are established can the doctrine of 'joint enterprise' be invoked."

In *Schwartz* v. *Johnson,* 152 Tenn. 586, 280 S. W. 32, 33,

47 A. L. R. 323, in holding that under the facts in that case there was no joint adventure, the court says:

"In a joint enterprise, in order to impute the negligence of one of the parties to the other, each must have authority to control the means or agencies employed to execute the common purpose. *Nesbit* v. *Town of Garner,* 75 Iowa 314, 39 N. W. 516, 1 L. R. A. 152, 9 Am. St. Rep. 486; *Koplitz* v. *St. Paul,* 86 Minn. 373, 90 N. W. 794, 58 L. R. A. 74.

" 'Parties cannot be said to be engaged in a joint enterprise, within the meaning of the law of negligence, unless there be a community of interest in the objects or purposes of the undertaking, and an equal right to direct and govern the movements and conduct of each other in respect thereto. Each must have some voice and right to be heard in its control and management.' *Cunningham* v. *City of Thief River Falls,* 84 Minn. 21, 86 N. W. 763.

"The foregoing from the Supreme Court of Minnesota has been frequently cited and carried into the textbooks, and is, in our opinion, a sound statement of the law."

In *Campbell* v. *Campbell,* 104 Vt. 468, 162 Atl. 379, 380, 85 A. L. R. 626, the court says: "To constitute a joint enterprise within the meaning of the law, the parties must have a community of interest in the object and purpose of the undertaking, and an equal right to direct and govern the movements and conduct of each in respect thereto. *Round* v. *Pike,* 102 Vt. 325, 148 Atl. 283; *Loomis et al.* v. *Abelson,* 101 Vt. 459, 144 Atl. 378; *Landry* v. *Hubert,* 100 Vt. 268, 137 Atl. 97; *McAndrews* v. *Leonard,* 99 Vt. 512, 134 Atl. 710."

In the instant case the evidence does not show a state of facts from which it can be reasonably inferred that the plaintiffs had, exercised, or were entitled to exercise, a voice as to the control and operation of Denton's automobile. Notwithstanding the fact that Denton and the plaintiffs were mutually interested in going for, pur-

chasing and bringing back to camp the whiskey, so far as their presence in Denton's automobile was concerned, their relationship to him was that of guests to a host.

The fifth assignment of error is that the court erred in refusing to give instruction No. 6 as offered and in making the amendment therein which it made, and in refusing to give instructions Nos. 10 and 11 offered by the defendant.

From what has been said in discussing assignments of error Nos. 1, 2 and 3, it follows that the court did not err in refusing to give instruction 6 as offered or in making the amendment which it made therein.

Instructions Nos. 10 and 11 told the jury that if they believed from the evidence that Denton was negligent and that the plaintiff knew of and acquiesced in his negligence, they could not recover. The court did not err in refusing to give instructions 10 and 11. The evidence was not sufficient to sustain a verdict predicated upon a finding that the plaintiffs acquiesced in any negligence of which Denton may have been guilty.

The fourth assignment of error is thus stated by the plaintiff in error in his petition: "It was error to permit plaintiffs to argue to the court and jury that their driver was not negligent after having founded their cause of action and forum for trial upon his negligence."

The facts which bear upon this assignment of error are as follows:

The defendant Miles resided in the city of Norfolk. The causes of action arose in Princess Anne county. The actions were brought in the Corporation Court of the city of Hopewell where the plaintiffs and Denton resided. While that court had general jurisdiction to try such cases, the only ground upon which the proper venue for these actions could be in the city of Hopewell was that Denton and Miles were each guilty of negligence which was a proximate contributing cause of the collision. Sections

6049 (as amended by Acts 1928, ch. 492), 6050, Code Va. 1919.

The declarations, which contain only one count, allege that the concurring negligence of Denton and Miles was the proximate cause of the collision, and, therefore, stated cases which properly could be brought in the Corporation Court of the city of Hopewell, assuming that Denton was made a party defendant in good faith.

The plaintiffs neither gave nor introduced any evidence which can be said to have been introduced for the purpose of showing that Denton was guilty of any negligence, or which could be said to have warranted them in good faith in suing Denton jointly with Miles. And upon his cross-examination Hodges (who was introduced as a witness both for himself and for Rose) was asked the following questions, to which he gave the following answers:

"Q. Now, where is Mr. Denton at the present time?

"A. I believe Mr. Woody (the attorney for the plaintiffs) told me he was in Salem.

"Q. Did you make any effort to bring him here for this trial?

"A. We sent a subpoena to Richmond. That is where he was supposed to be. And they said he had gone to Salem about three days before that.

"Q. So you haven't him here this morning?

"A. No, sir.

"Q. And you haven't made any particular effort to get him here?

"A. We sent a telegram to Salem.

"Q. And did you get any answer?

"A. I do not know. Mr. Woody attended to that.

"Q. Now, what did Mr. Denton do, that was improper at the time of the accident?

"A. Nothing that I know of.

"Q. Then, why did you sue him? You have sued him, and said in your declaration that the accident was caused by his negligence.

"A. We just put it in the hands of our lawyer; and he said that that was the best thing to do.

"Q. Your lawyer told you that Mr. Denton was negligent, based on what you told him about how the accident happened? Is that right?

"A. We just told him how the accident happened. We told our lawyers the same thing that we are telling you all now; and we put it into their hands; and they said to let them do what they wanted to do with it; and they thought it was best to sue Denton also.

"Q. They told you that, upon your statement, the driver of the car in which you were riding was negligent, and that you ought to sue him too?

"A. They did not tell us that at that time. We just put it in the hands of our lawyers to bring suit."

The following testimony given by Hodges on his cross-examination has a tendency to show an inclination on his part to shield Denton from liability:

"Q. What did the driver do when he got to the point where he could see to his right up Arctic avenue? [3]

"A. He looked to the right and to the left.

"Q. Did the driver look up Arctic avenue at about the same time that you looked up Arctic avenue?

"A. I do not know.

"Q. Had you already looked when you saw the driver look, or did you see the driver look first?

"A. I did not see him look.

"Q. Then, how do you know that he looked? You just told the jury that the driver looked up Arctic avenue?

"A. I do not recall telling the jury that."

But, while the plaintiffs introduced no evidence to es-

---

[3] Hodges and Rose each testified that he looked to his right as soon as they cleared the obstruction caused by the bushes and weeds, but did not see Miles' automobile, and was rendered unconscious by the impact of the automobiles without ever having seen it, and only knew from hearsay that there had been a collision between the automobile in which they were riding and another automobile. Their companion Cuddihy testified that he was looking straight ahead and did not see the Miles car until the very instant of the impact.

tablish that Denton was guilty of negligence, Miles did. He introduced evidence which tends strongly to prove that Denton was guilty of negligence which was a proximate cause of the collision. However, if the jury disbelieved the testimony introduced by Miles which was contradictory of or tended to conflict with that introduced by the plaintiff, perhaps it *might* have returned a verdict predicated upon a finding that Denton was not proven to be guilty of negligence which was a proximate cause of the collision; but under no view of the evidence can it be said to affirmatively establish that Denton was not guilty of negligence.

Further, though almost eight months had elapsed between the time process had been served upon Denton and the declarations had been filed, and the time of this trial, Denton had not appeared or pleaded. Therefore, at the time of the trial the plaintiffs either had or were entitled to office judgments, with writs of enquiry, against him, and, upon proving their damages were entitled to have final judgments against him, without introducing any testimony to show that he was guilty of negligence. Denton stood as having confessed that he was guilty of negligence which was a proximate cause of their injuries; and apparently the plaintiffs were clinging to their rights to have their writs of enquiry executed against Denton, for they had not dismissed their actions as to him. Section 6131,[4]

---

[4] Section 6131, Code Va. 1919: "If a defendant, who appears, fail to plead, answer, or demur to the declaration or bill, a rule may be given him to plead. If he fail to appear at the rule day at which the process against him is returned executed, or, when it is returnable to a term, at the first rule day after it is so returned, the plaintiff, if he has filed his declaration or bill, may have a conditional judgment or decree *nisi* as to such defendant. No service of such decree *nisi* or conditional judgment shall be necessary. But at the next rule day after the same is entered, if the defendant continue in default, or at the expiration of any rule upon him with which he fails to comply, if the case be in equity, the bill shall be entered as taken for confessed as to him, and if it be at law, judgment shall be entered against him, with an order for the damages to be inquired into, when such inquiry is proper."

See, also, rule of the Supreme Court of Appeals adopted November 6, 1929, in pursuance of section 5960a, Michie's Code Va. 1930, Acts 1928, ch. 411, p. 1075.

Code Va. 1919; 4 Minor Inst. (1st Ed.) 602; *M'Million* v. *Dobbins,* 9 Leigh (36 Va.) 422, a tort action for deceit; *Hickman* v. *B. & O. Ry. Co.,* 30 W. Va. 296, 4 S. E. 654, 7 S. E. 455, an action for assault and battery; Barton's Law Pr. (2d Ed.) pp. 557 and 563; Burks' Pl. and Pr. (2d Ed.) pp. 249-257, particularly p. 257.

With the record in this shape, the cause came on for argument, and in his argument Mr. Woody, counsel for the plaintiffs, made the following statement:

"Even though the plaintiffs were engaged in a joint enterprise with Denton, yet they ought to recover, because the evidence does not show any negligence on Denton's part." * * *

Mr. Ashburn, counsel for Miles, here interposed, and the following occurred:

"I do not like to interrupt the argument of counsel, but I ask your honor to instruct the jury that counsel is not entitled to argue contrary to his own declaration; and that he can not argue in the face of it. He is bound by it.

"Mr. Woody: That is a declaration. You are bound not by the pleadings, but by the proof introduced under the pleadings.

"The court: You must confine yourself to the proof in the evidence.

"Mr. Woody: Absolutely.

"We brought a suit against Denton, but the evidence, as brought forth on the stand, did not support any charge of negligence against Mr. Denton, although we brought a suit against him in the beginning.

"Mr. Ashburn: We save an exception."

No other motion was made with reference to this matter.

In his petition for a writ of error Miles' counsel states that "no motion in arrest of judgment was made in these cases, but the court was asked to set aside the verdicts of the jury because it was urged that the argument erroneously permitted plaintiff's counsel and the inconsistent positions which they were permitted to take was a fraud

on the court." But upon a careful examination of the record we find that the record does not show that this was one of the grounds on which the defendants moved the court to set the verdict aside.

In his petition for a writ of error Miles seems to make two contentions under this assignment of error:

First, he contends that notwithstanding the verdicts, the court should have dismissed these actions as to him on the ground that Denton had not been sued jointly with Miles in good faith, but merely to give color to the bringing of the action in the city of Hopewell, in which they lived, instead of in the city of Norfolk where Miles resides, or in Princess Anne county where the collision occurred, and that this constituted a fraud upon the court.

It is useless to consider here whether, in view of the provisions of section 6105, as amended by Acts 1920, ch. 27, the opinions in *Moore* v. *N. & W. Ry. Co.,* 124 Va. 628, 98 S. E. 635, and *Southern Sand, etc., Co.* v. *Massaponax, etc., Co.,* 145 Va. 317, 133 S. E. 812, and rule 22 of this court, this question could have been raised at this stage of these cases.

No motion was made to dismiss the causes of action on this ground, and, therefore, this contention is without point in this case.

His second contention is that the court committed reversible error in not having ruled that under the facts and circumstances of this case the plaintiff was precluded from arguing to the jury that Denton was not guilty of any negligence whatever, and that Miles alone was responsible for the collision.

The first question which here presents itself is, did Miles lose the right to complain of this ruling by not moving to set the verdicts aside on this ground? In view of the provisions of section 6254,[5] Code Va. 1919, this ques-

---

[5] Section 6254: "The failure to make a motion for a new trial in any case in which an appeal, writ of error, or supersedeas lies to or from a higher court shall not be deemed a waiver of any objection made during the trial if such objection be properly made a part of the record."

tion should, we think, be answered in the negative. This case is very different from the case of *Fox* v. *Mason,* 139 Va. 667, 124 S. E. 405. In that case the party in whose favor a verdict was returned had opposed in the trial court the motion to set aside the verdict.

Under the facts of this case we are of opinion that the court erred in permitting counsel for the plaintiffs to argue to the jury that Denton was not guilty of any negligence which was a proximate cause of the collision. It should have corected him and have told the jury that for the purposes of this trial it stood admitted by the plaintiffs that Denton was guilty of negligence which was a proximate cause of the collision, and that the question for it to determine was whether Miles was also guilty of negligence which proximately contributed to causing it. Wigmore on Ev. (2d Ed.) sections 1064, 2588, 2589, 2597; 49 C. J. (Pleading) p. 122; Jones, Com. on Ev. (2d Ed.) sections 996, 1004, 1005, 1008; *Colley* v. *Summers Parrott Co.,* 119 Va. 439, 89 S. E. 906, Ann. Cas. 1917D, 375; *Bliss* v. *Spencer,* 125 Va. 36, 99 S. E. 593, 5 A. L. R. 619; *Lackey* v. *Price,* 142 Va. 789, 128 S. E. 268; *Scott* v. *Scott,* 162 Iowa 261, 143 N. W. 1103; *Fairley* v. *Falcon,* 204 Iowa 290, 214 N. W. 538; *West Chicago St. R. Co.* v. *Loewe,* 58 Ill. App. 606.

The sixth assignment of error is practically abandoned by the plaintiff in error, and it is not necessary to advert to it further.

The seventh assignment of error is that, in view of the very serious, and to some extent permanent, injuries which each plaintiff received, the smallness of the verdicts in these cases indicates either (1) that "the jury recognized that the plaintiffs were not entitled to any recovery against Miles" or (2) that the jury applied the doctrine of comparative negligence; and that the court should have set the verdict aside on one of, or both, these grounds.

The general rule is that in a personal injury case a verdict against a defendant will not be set aside on his motion on the ground that the damages awarded are less.

than the plaintiff was entitled to on the evidence. The rationale of the rule is that the defendant could not have been damaged by such a verdict. (See note on "Inadequacy of verdict as ground of complaint by party against whom it is rendered." 31 A. L. R. 1091-1108.) We have not been cited to nor have we found any case in which the facts were similar to those of the case at bar in which this question has been discussed; but we are of opinion that a case such as this is presents an exception to the general rule.

When, as here, A and B are sued jointly for personal injuries alleged to have been caused by their independent but concurring negligence, and the great preponderance of the evidence tends to show that A was, and B was not, guilty of negligence which was a proximate cause of the injuries, if the jury returns a verdict against B alone for a sum plainly greatly less than would appear to be a reasonable compensation for the injuries which the uncontradicted evidence shows the plaintiff suffered, the smallness of the verdict casts serious suspicion on the integrity of the finding by the jury that B was liable. Particularly is this true where, as in this case, the plaintiff's counsel in his argument invited and urged the jury to exculpate A and fix the whole blame on B for the manifest purpose of escaping the possible imputation of A's negligence to his client.

We are of opinion that in such a case the ends of justice are best served by setting the verdict aside on the motion of the defendant, and awarding him a new trial on all issues; and that in the instant case the court erred in not doing so.

For the reasons above stated, both judgments will be reversed, both verdicts set aside, and both cases remanded for new trials on all issues.

*Reversed and remanded.*