# Wytheville

BEATRICE E. SAUNDERS V. RUSSELL'S, INCORPORATED.

June 12, 1939.

Record No. 2061.

Present, All the Justices.

The opinion states the case.

*Crumpler & Crumpler* and *James G. Martin & Son,* for the plaintiff in error.

*John K. Hutton* and *Thomas L. Woodward,* for the defendant in error.

GREGORY, J., delivered the opinion of the court.

The plaintiff in error, Beatrice E. Saunders, proceeded in the lower court by notice of motion against Russell's, Incorporated, to recover an alleged indebtedness of $10,700. The jury found a verdict in her favor but allowed her only $2,000. It was confirmed by the trial court. She is not

satisfied with the judgment and is now claiming that it should have been for at least $4,149.90, and asks this court to enter a judgment for her in that amount.

In the notice of motion for judgment the plaintiff set forth in twelve separate counts twelve specific notes ranging in amounts from $200 to $2,000, aggregating $8,000 and five checks aggregating $2,700, all of which she charges represented money she had lent the defendant. The defendant at first denied owing the plaintiff any sum whatever but it is not now objecting to the judgment.

The facts may be stated as follows: Miss Saunders, a business woman of wide experience, was a stockholder and also the manager and bookkeeper of the Edgerton Bus Lines, Incorporated. It leased a store room in the Hotel Elliott building in Suffolk for a bus terminal. In 1929 she and two brothers, J. A. and W. Earl Russell, opened a fountain, confectionery and drug business in the terminal under the partnership name of Russell's. Each of the partners was to invest $300 and the Russells paid their respective shares to Miss Saunders, who was the bookkeeper and did the clerical work of the partnership. W. Earl Russell was to manage the store at a salary of $35 per week and his brother, J. A. Russell, was an inactive member.

Fixtures were purchased at the price of $2,400, on which ten per cent was to be paid in cash. A loan from the bank of $1,000 was secured and deposited to the credit of the firm and thereafter all checks were drawn by Miss Saunders.

In 1930 the hotel building was sold and the firm had to obtain other quarters. A new location was found just across the street from the former one and in order to acquire new and suitable fixtures a loan of $2,000 was obtained from Miss Saunders. Later in 1930, a charter was obtained for the business and from then on its name was Russell's, Incorporated. W. Earl Russell was president, J. A. Russell, vice-president, Miss Saunders, secretary and treasurer, and the three constituted the board of directors and stockholders. Two thousand dollars in stock was issued to each of them. The business continued to be operated in the same manner as before but by the corporation instead of the partnership.

The corporate affairs were loosely conducted. No organization meeting was held, no by-laws adopted and the charter was never accepted. Prior to 1938, no meeting of stockholders or of the directors was held. The notes and checks now being asserted as evidencing the numerous loans alleged to have been made by Miss Saunders to the corporation, were never brought to the attention of the Russells.

The notes and renewals in each instance were executed by Miss Saunders, styling herself secretary and treasurer of Russell's, Incorporated, and were made payable to herself. They were not made or indorsed by either of the Russells. The checks were likewise made by her as secretary and treasurer and they were also payable to her.

It is conceded that no authority was granted Miss Saunders to make the alleged loans and no authority was given her to execute the notes and checks payable to her. She claims, however, that the corporation received the various sums represented by the notes and checks.

The Edgerton Bus Lines failed, and after a receivership and a loss to Miss Saunders of some $12,000, it was reorganized under the name of Virginia Coach Lines and Miss Saunders became manager and its secretary and treasurer. J. A. Russell testified that he had learned that Miss Saunders was asserting an indebtedness against the coach lines of $17,000. This caused him to sell his interest in the coach lines and to bring the matter to the attention of his brother and to insist that the financial status of Russell's, Incorporated, be ascertained. Miss Saunders was requested to render an account showing the condition of the business of Russell's, Incorporated. She made a statement in which it was disclosed that the corporation owed her $10,495 for loans claimed to have been made by her to it. Neither of the Russells, according to their testimony, knew anything of these particular loans.

W. Earl Russell then demanded the records and obtained the cancelled checks, check stubs and bank pass books and discovered that there were no other books except some very

insufficient ones beginning in 1934. It was then learned that Miss Saunders had been drawing from Russell's, Incorporated, monthly sums since 1929 at from $50 to $90 and since 1934 she had falsely noted on the checks that they represented "kitchen purchases" which did not in fact exist. It was also discovered that many checks were drawn for "drop shipments of cigarettes" which were fictitious. Other checks drawn payable to cash and purporting to have been drawn to pay the obligations of Russell's, Incorporated, were indorsed and cashed by her.

In 1938 a meeting of the stockholders and directors of Russell's, Incorporated, was held and Miss Saunders was deposed as secretary and treasurer. She then demanded payment of her claim, which was refused, and this action followed.

An accountant was employed to ascertain the condition of the business and to establish the amount due Miss Saunders, if any. The records which were incomplete, poorly kept and to some extent fictitious, were turned over to him. It was impossible to obtain a true picture of the condition of the business. There had been no permanent books kept except insufficient ones since 1934, no inventories, and no record of notes payable, no account of rents collected nor of other material information essential to a complete audit. The audit is so incomplete and based upon so many uncertainties that it is of little or no value.

It was shown by the evidence that Miss Saunders never mentioned to her associates the fact that she was making large loans to the corporation. In fact she claimed to have loaned it $34,115 and to have repaid herself $23,620, leaving $10,495 still due her, yet there is no record of these substantial transactions. No record informs us of the amount upon which she drew interest, although she admitted that she charged the corporation 8 per cent interest and repaid herself by checks drawn payable to her but with the notation on the checks that the proceeds were for "kitchen purchases" which notation of course was false. She admitted that she made the false notations on the checks to

conceal the financial affairs of the business. She claimed to have a side note for more than $1,300 given to her in order to further conceal the affairs of the corporation, but she stated that the side note had been paid.

She testified that she had in her charge funds of the Atlantic Greyhound Lines which were received from ticket sales which she used as her own, lending them to Russell's, Incorporated, at will and repaying them. She mingled these funds with her own. She stated that she did not know the amount of her salary from the Edgerton Lines and that she had indorsed for the Coach Lines to the extent of $17,-000. She admits that the Russells were trusting her to properly keep the books of the corporation but that all checks prior to some time in 1932 had been destroyed. More than $5,900 in checks made payable to cash and drawn out by her are shown upon the audit as "Non-supported Disbursements."

The validity of the claim of Miss Saunders stands upon her testimony alone. She is not corroborated by the testimony of any independent witness nor are there any circumstances pointing to the truth of her testimony. In her position as secretary and treasurer she was obligated to act with the utmost good faith. She was a fiduciary. The burden of proof rested upon her to show clearly that the loans were either authorized by the corporation or that it actually received them. She should have prepared and shown a true and satisfactory account between the corporation and herself. Isolated items selected from a great maze of transactions will not suffice. She was the sole custodian of all the records and had entire charge of the finances of the corporation, and, therefore, was in a better position to render a proper account than any other person. She has presented no such account and has failed to prove that the corporation actually received the benefit of the numerous alleged loans.

The auditor's report, based upon the incomplete information furnished and upon his assumptions, showed that Miss Saunders was due $3,248.90. Her counsel add to that

amount the sum of $900 (the original investment) which they claim was improperly charged to her and arrive at the sum of $4,148.90 for which they ask judgment in this court.

When we consider the unfounded assumption of the auditor that the amounts of all checks drawn by Miss Saunders and cashed by her were used for the benefit of the corporation, along with the facts that no books were kept; that more than half of the invoices were missing; that many checks were missing; that she made false entries on the checks and gave herself a side note for some $1,300; that the notes sued upon were made by her and payable to her without the knowledge of the Russells and that since her retirement from the business it has prospered to the extent that its outstanding bills are now practically all paid, we must conclude that it was clearly the province of the jury to accept the audit or reject it. They evidently rejected it along with the unreasonable testimony of Miss Saunders and rendered their verdict for $2,000, the only amount which the evidence clearly discloses was used for the benefit of the corporation.

The law in such cases is comparatively plain and is clearly expressed in *D. Humphreys & Son* v. *Broughton,* 149 Va. 789, 141 S. E. 764. There Broughton who was formerly secretary and treasurer of the corporation, brought an action against the corporation on a note for $1,200 which was made by him as secretary and treasurer and payable to himself. The court, in holding that no recovery could be had, said: "The note was not void or invalid, but being a personal obligation to Broughton and signed by him as secretary and treasurer of the corporation it did not become evidence of the indebtedness until he had proven his authority to incur the debt for the corporation, or had proven that the amount thereof had been used for the benefit of the corporation."

Broughton was the bookkeeper and like the case at bar. there was no record of the note. The court observed that: "It would be contrary to reason and sound legal principles to permit Broughton to prove his authority to borrow money

from himself and execute a note for the same by his own un-corroborated statement."

We quote from the *Humphrey's Case:* "While Broughton did not have authority to execute the note sued upon, yet there is a principle of justice and equity that where an agent assumes to borrow money for a corporation and executes its note for the same, and the corporation gets the benefit of said money by its application to the payment of its just obligations, it is estopped to deny his authority."

In the case here the plaintiff in error has failed to carry the burden of proving that Russell's, Incorporated, received the benefits of the money claimed to have been loaned, therefore, the principles of estoppel do not apply.

Miss Saunders claims that the amount of the loans was deposited in the bank to the credit of the corporation, but if this be true it still does not prove that the corporation got the benefit of the money, for she drew all checks, many (as we have seen) payable to herself. How she applied the money, whether to the obligations of the corporation or to herself is not sufficiently shown. The money was just as much under her control as it was before it was deposited. The law imposed upon her the absolute duty of showing that the money was actually applied to the just obligations of the corporation. *D. Humphreys & Son* v. *Broughton, supra.*

Contracts between a corporation and its officers are not void *per se,* but voidable at the option of the corporation. *Griffith* v. *Blackwater Boom, etc., Co.,* 46 W. Va. 56, 33 S. E. 125. And in *Flanagan* v. *Flanagan Coal Co.,* 77 W. Va. 757, 88 S. E. 397, the West Virginia court held that the treasurer of a corporation who has not accounted for the funds of the corporation which came into his hands will not be permitted to pick out certain items of money loaned by him and base a suit thereon against the corporation without showing the actual state of the account between him and his company and the actual balance due him, if any.

The motion to set aside the verdict as contrary to the law and the evidence was properly overruled.

Complaint is made of the refusal of the court to grant instruction one. It follows: "The court instructs the jury that nothing can be charged against Miss Saunders relative to the original $900 invested by the partnership."

The verdict for $2,000 practically demonstrates that it embraced only the loan of $2,000 which the Russells do not now contest that the corporation received. It strongly tends to show that the $900 item was not considered. However, there is conflict in the evidence as to whether Miss Saunders ever paid her part of the $900 into the corporation. We think the jury should have been allowed to consider that disputed fact.

It is also urged that as no plea of set-off was filed by Russell's, Incorporated, regarding the $900, it could not be considered. This contention is expressly answered in the case of *Lackey* v. *Price*, 142 Va. 789, 128 S. E. 268, where it is held that the defendant can show anything under the general issue which tends to establish that nothing is due. See also, Burks' Pleading & Practice, Third Edition, section 100, page 203. We do not think the instruction should have been given.

Instruction two, which was refused, would have forbidden the jury to consider any rents which had been collected by Miss Saunders and which she had not turned over to the corporation, except $205. This instruction was properly refused because the evidence discloses that large sums collected by Miss Saunders were rent which belonged to the corporation and which were withheld by her.

Instruction four was properly refused. What has been said about the failure to file a plea of set-off applies here.

Finally, counsel for the plaintiff in error makes the point that a new trial should be awarded because new evidence has been discovered which could not reasonably have been discovered before the trial and that its introduction would likely produce a different result. This evidence consisted of eight deposit slips obtained from the bank which disclosed that certain deposits had been made by W. Earl Russell of some of the items now sought to be recovered and for that

reason he could not say that he was ignorant of those items which were being furnished by Miss Saunders.

Rules regulating after-discovered evidence have been stated and restated so often that we will not attempt to do more here than refer to the case of *Hamrick* v. *Fahrney*, 157 Va. 396, 161 S. E. 43.

In the present case the deposit slips were just as accessible before the trial as they were afterwards. They were merely cumulative or collateral to the main issue and would not likely produce a different result if a new trial were granted. No peculiar facts or circumstances warrant the relaxation of the general rule.

The judgment is affirmed.

*Affirmed.*