## Richmond

### Thomas Lee Short, an Infant Who Sues by Roy R. Short, His Father and Next Friend v. Arthur Reuben Long.

June 13, 1955.

Record No. 4345.

Present, Hudgins, C. J., and Buchanan, Miller, Smith and Whittle, JJ.

The opinion states the case.

*Joshua L. Robinson* and *I. R. Dovel*, for the plaintiff in error.

*A. Erwin Hackley*, for the defendant in error.

Miller, J., delivered the opinion of the court.

Thomas Lee Short, an infant who sued by his next friend, in-

stituted action against Arthur Reuben Long to recover damages for personal injuries inflicted upon him when an automobile that he was operating collided with a truck owned and driven by defendant Long. In the grounds of defense and counterclaim filed by Long, he denied that he caused the collision and alleged that Short's negligence was the sole proximate cause of the mishap. In his counterclaim Long sought recovery for personal injuries, and for property damage to his truck.

The verdict of the jury denied recovery to Short and awarded Long $400 on his counterclaim. From the judgment entered upon that finding Short appealed and prayed that a new trial be awarded on all issues.

Appellant assigned numerous errors but those relied upon may be stated as follows:

1) The court erred to appellant's prejudice when it sustained Long's motion to quash an interrogatory propounded under §§ 8-320 and 8-321, Code of 1950, which would have required Long to state what quantity of alcoholic beverages he had consumed during the eighteen hours immediately preceding the mishap and at what hours he consumed the same.

2) The evidence fails to establish that appellant was guilty of any negligence and conclusively shows that the collision was caused solely by Long's negligence.

3) The verdict of $400 is so inadequate and disproportionate to the damages proved by Long as to show that the jury ignored the court's instructions and did not make a finding upon the issue of whose negligence caused the collision but undertook to apportion the damages between the parties without consideration of liability.

Route 340 is a hard-surfaced highway twenty feet wide with a broken line down its center, and it extends in a northerly and southerly direction. About two miles south of Luray in Page county, route 629, a dirt highway which extends in an easterly and westerly direction, intersects route 340 from the west, but it does not cross that highway.

The collision occurred in the intersection on January 9, 1952, about 6:30 p.m. when Short, operator of the automobile involved, undertook to pass the truck driven by Long, as both vehicles were proceeding north along route 340.

It would serve no good purpose to set out the testimony of each witness in detail. It is sufficient to say that Short and two occupants

of his car testified that they neared Long's truck from the rear when it was 200 to 300 feet south of the intersection; and that before undertaking to pass, Short flicked his lights, sounded his horn, and pulled into the left lane. They testified further that when the vehicles were about 100 feet south of the intersection, and when Short's car had gotten within a few feet of the truck, that vehicle turned slightly to the left and then suddenly made a more abrupt turn to the left across the path of Short's car, and thus caused the collision. According to these witnesses, Short was driving at a speed of from 45 to 50 miles per hour as he undertook to pass the truck, which was being operated at a materially lesser speed.

Long was the only occupant of the truck, and his account of how the accident happened is at material variance with that given by Short and his companions. He testified that as he proceeded northwardly along route 340, he was driving on the easterly half of the highway and that he did not turn his truck to the left or upon the west half of the road. He also said that he did not attempt to turn left into route 629 and had no intention of doing so for he was then on his way to Keith Gochenour's home, which is located to the east of route 340 some distance north of the intersection. He further said that he heard no horn, nor did he see the lights from Short's car until about the time it struck his truck.

When the collision occurred, Short's car veered to the left across the west shoulder of the road and onto the embankment, then turned back to the highway, crossed to the eastern side of route 340 and entered a field on that side. It traveled an over-all distance of 320 feet from the point of collision. After the collision Long's truck proceeded in a slightly northwesterly direction about 99 feet and overturned. When it came to rest, its rear end was on the west shoulder of route 340, and it extended across the western half of the highway with the front end almost to the center line of the road. Observable debris and some dirt resulting from the collision appeared on the western half of route 340 at its intersection with route 629. Most of the marks caused by the collision were upon the western half of route 340, but at the intersection there was a pronounced scrape or mark which began a few feet to the east of the center of route 340. It extended about 10 feet in a northwesterly direction across the center line and well into the western half of that highway.

The state trooper who investigated the accident made a sketch of the scene that night. This sketch locates and fixes the marks that

he found on the highway and the place where the vehicles came to rest. In testifying and explaining his sketch, the trooper stated that it appeared to him that the heavy, 10-foot scraped line or mark which crossed the center line of route 340 had been made by some part of the truck.

Pictures of the two vehicles disclose that Short's automobile came in contact with Long's truck at or slightly forward of the truck's left rear wheel. However, the ultimate result of the collision was to inflict much more pronounced damage near the front of the truck than at or near the left rear wheel. The impact toward the front was sufficiently violent to knock out the front axle and undercarriage of the truck, and that vehicle was almost demolished.

The damage inflicted upon Short's car was primarily to its right front. The right side of the hood, the right front fender, and that end of the front bumper were torn away and other damage inflicted to that part of the vehicle.

The evidence disclosed that Long sustained some minor personal injuries, was confined to the hospital about two and a half days, and his medical and hospital bill amounted to $69.50.

A picture of the truck taken after the accident was introduced in evidence. From it the jury might draw some conclusions as to the value of the vehicle before the collision and several witnesses testified as to what parts of the truck were broken and damaged. However, M. E. Huffner, owner and manager of a motor company, was the only witness to testify as to the monetary value of Long's truck. He sold Long another truck after the accident and allowed him $100 on a trade-in of the damaged vehicle. He also said that he thought Long's truck would have been worth about $900 before the collision. But from his statement it is not made clear whether $900 was its sale or its trade-in value before the collision.

■ Such being the material facts disclosed by the record, we turn now to a consideration of plaintiff's assignments of error.

Was it error to quash the interrogatory? By § 18-75, Code of 1950, the operation of a motor vehicle while under the influence of intoxicants is made a criminal offense. However, in argument at bar counsel for Long disavowed any attempt or intention to claim immunity under the fifth amendment of the Constitution of the United States. With that disavowal before us, we give no consideration to whether or not it would have tended to incriminate Long and violated his constitutional rights had he been required to answer the interrogatory.

When the court quashed the interrogatory, there was no indication that Long had partaken of intoxicants at any time previous to the accident. The scope of the interrogatory was such that it necessarily called for answers that would have been irrelevant and might well have tended to prejudice and divert the jury from consideration of the material issues. Whether or not Long had drunk intoxicants at some time as remote from the hour of the mishap as was covered by the question was irrelevant and immaterial, and for that reason the interrogatory could well have been disallowed.

But there are more cogent reasons why it was proper to quash the interrogatory. Shortly prior to the accident Long had stopped at a store a mile or so south of the point of collision and had engaged in conversation with Ralph Comer and Fred Gochenour, both of whom went to the scene of the accident and later testified at the trial. These witnesses said that before Long left the store, he stated that he was going on to Keith Gochenour's home, which was reached by turning eastwardly from route 340. Though Comer, Gochenour and Long were subjected to cross-examination, counsel for Short never asked Long whether he had partaken of intoxicating drink previous to the collision, nor did he question the other two witnesses as to whether Long appeared to be under the influence of intoxicants when he was at the store.

The physician who attended Long immediately after the accident and before he was admitted to the hospital, was available but it does not appear that he was interviewed by Short. The physician also testified at the trial, but he was not asked if there was any indication that Long had been drinking intoxicants.

Here Short had ample opportunity both before and at the trial to inquire into Long's sobriety or lack of sobriety before the mishap. However, he failed to make inquiry of the available witnesses upon this subject.

The right given by § 8-321 to propound interrogatories to a litigant relevant to material matters in issue which are within his knowledge by his opponent does not justify interrogation upon the conduct and actions of a litigant prior to an accident as to which information is reasonably available from other sources and which may be readily and fully inquired into and developed upon the trial.

Under the facts and circumstances of this case, it was well within

the sound discretion of the trial judge to refuse to allow Short to inquire into this matter before trial, and it clearly appears that he was not prejudiced in any manner by that ruling. *Clark* v. *Hodges,* 185 Va. 431, 39 S. E. (2d) 252.

■ We find no merit in Short's contention that there is no evidence of actionable negligence on his part or that the evidence conclusively proves that Long was negligent. The testimony as to how the collision occurred and as to whose negligence it was attributable was conflicting. The courses that the vehicles took after the accident when they were concededly out of control and the fact that most of the marks made on the highway after the vehicles made contact appeared on the left side of the road, are not conclusive as to how or precisely where on the road the vehicles struck each other.

"However, whether a motor vehicle, after loss of control, comes to rest on the right or the left side of the highway is immaterial, for, as stated, no one can predict with any degree of accuracy the movements of a motor vehicle out of control." *Keen* v. *Harman,* 183 Va. 670, 676, 33 S. E. (2d) 197.

"It is a matter of common knowledge that if an automobile, traveling at fifty-five miles per hour, or less, gets out of control it may behave in a manner which seemingly defies all laws of physics. * * *" *Richter* v. *Seawell,* 183 Va. 379, 382, 32 S. E. (2d) 62.

Different inferences as to how and where the collision took place could be reasonably drawn by the jury from the marks upon the highway and from the damages done to the respective vehicles.

It was the sole province of the jury to decide whom they would believe. It was also its province to determine from all the evidence whose negligence caused the collision. There being credible evidence to support either litigant's version, the finding of the jury settles the issue of whose negligence caused the mishap.

■ Because Long proved damages in excess of $400, should the judgment confirming the verdict be vacated at Short's instance and a new trial ordered on all issues?

"In an ordinary and usual action in tort, the amount of damages is unliquidated, and the courts have frequently held that a losing party in such action has no basis for successful complaint and for setting aside a verdict on the ground that the verdict brought in for the other party was inadequate and for less than it should have been. Such verdicts have often been sustained as against contentions that

they are contrary to the evidence or contrary to law." 174 A. L. R. 798.

The above principle is recognized in *Miles* v. *Rose*, 162 Va. 572, 595, 175 S. E. 230, for it is there said:

"The general rule is that in a personal injury case a verdict against a defendant will not be set aside on his motion on the ground that the damage awarded are less than the plaintiff was entitled to on the evidence. The rationale of the rule is that the defendant could not have been damaged by such a verdict. * * *"

Though the judgment and verdict were set aside in the *Miles* case at the instance of the party against whom the inadequate verdict was rendered, there were unusual circumstances that prompted the court to take that action. Plaintiff Rose, who had sustained severe and permanent personal injuries, instituted action against two defendants for damages allegedly inflicted because of their independent but concurring negligence. The decided preponderance of the evidence tended to show that defendant Denton had caused plaintiff's injuries, that defendant Miles was not guilty of negligence which proximately caused the mishap, yet a verdict of $750 was returned against Miles and a finding was made in favor of Denton. Upon concluding that the award was clearly much less "than would appear to be a reasonable compensation for the injuries which the uncontradicted evidence" showed plaintiff had suffered, the court reversed the judgment and ordered a new trial upon all issues. In taking that action, the court said that "the smallness of the verdict casts serious suspicion on the integrity of the finding of the jury that" Miles was liable and that was particularly true because "the plaintiff's counsel in argument invited and urged the jury to exculpate" Denton and place the blame on Miles.

Here the jury might have concluded that the value of $900 placed upon the truck as its value before the accident was a trade-in appraisal and not its market value. If that be true, then Long's property damage could have been something less than $800, for he received $100 for the damaged vehicle. What actual value should and may have been placed upon the truck by the jury after inspection of the picture and what allowance was made for the minor personal injuries are not susceptible of determination. Both claims of damage involved elements that were to some degree dependent upon the opinion or the judgment as to values of the jurors.

The verdict is for a substantial, though somewhat inadequate, sum,

yet the evidence was ample to establish Short's liability and upon no reasonable theory can this verdict be considered as a finding for Short. It is thus clear that it should not be disturbed at his instance because of its inadequacy alone. *Chappell* v. *White*, 184 Va. 810, 36 S. E. (2d) 524.

The judgment of the trial court is affirmed, and that is the "long" and "short" of it.

*Affirmed.*