## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

LOUIS A. HORNBACK, ET AL. v. STATE HIGHWAY COMMISSIONER OF VIRGINIA.

CORDIES MOORE, ET AL. v. STATE HIGHWAY COMMISSIONER OF VIRGINIA.

March 9, 1964.

Record Nos. 5680, 5681.

Present, All the Justices.

*Morris H. Fine (Fine, Fine, Legum & Schwan*, on brief), for the plaintiffs in error.

*M. Ray Johnston, Assistant Attorney General (Robert Y. Button, Attorney General; Paul D. Stotts, Assistant Attorney General*, on brief), for the defendant in error.

CARRICO, J., delivered the opinion of the court.

The State Highway Commissioner, pursuant to the provisions of Code, §§ 33-57 to 33-75, instituted eminent domain proceedings against Louis A. Hornback and Juanita B. Hornback (Record No. 5680) and Cordies Moore and Maggie L. Moore (Record No. 5681), the landowners, for the acquisition of the entire property of each of the landowners in connection with the construction of an interstate highway in the city of Norfolk.

Prior to trial, the landowners, pursuant to Code, § 8-320, served upon the Commissioner interrogatories seeking the disclosure of the names and addresses of all appraisers who evaluated the properties for the Commissioner and the amount of each such appraisal.

The Commissioner filed motions to quash the interrogatories. The trial court, after argument, granted the motions and orders were entered quashing the interrogatories.

Thereafter, the landowners, pursuant to Code, § 8-324, filed affidavits and secured the issuance of summonses directed to the right of way engineer of the Suffolk District of the Highway Department.

These summonses required the witness to attend the condemnation hearings and, "to bring with you the papers set forth in the attached affidavit." The papers listed in the affidavits were "estimates, appraisals, etc."

The Commissioner then filed motions to quash the summonses. After argument, the trial court granted the motions and orders were entered quashing the summonses.

At the hearing of each case, the landowners sought to show that the Commissioner had secured at least two appraisals of the property, although only one appraiser actually testified. The trial court refused to admit this testimony, and the landowners excepted.

An award was returned in each case by the condemnation commissioners and confirmed by the court. The cases are here on writs of error awarded the landowners.

The questions to be determined are:

(1) May a landowner, in eminent domain proceedings brought by the State Highway Commissioner, compel, through the use of interrogatories issued and served pursuant to Code, § 8-320, the disclosure of the names, addresses and evaluations of the appraisers employed by the Commissioner?

(2) May a landowner, in such proceedings, compel, through the use of a summons issued and served pursuant to Code, § 8-324, the production in court of the written reports of all appraisers who evaluated the property for the Commissioner?

(3) In the trial of such proceedings, is the landowner entitled to show how many appraisals of the property were secured by the Commissioner?

[1] As has been noted, the interrogatories in this case were served pursuant to the provisions of Code, § 8-320. The scope of such interrogatories is fixed by Code, § 8-321 which provides that answers may be compelled to those interrogatories which are, "relevant, and such as the person to whom they are propounded would be bound to answer upon a bill for discovery."

Burks Pleading and Practice, 4th Ed., Sec. 257, pp. 459, 460, has this to say of interrogatories:

"This statutory method of securing information from an adversary is a substitute for the old bill of discovery and is of the same scope as the bill of discovery. Although largely rendered obsolete the bill of discovery is still available in Virginia, but if a litigant files interrogatories he cannot proceed thereafter by a bill of discovery. The

object of interrogatories as of the bill of discovery is to enable a litigant to compel an adversary to disclose under oath facts essential to the protection of the rights of his opponent and which facts his opponent otherwise might be unable to prove. Interrogatories, however, must call for facts only which are within the knowledge of the party to whom addressed. They cannot ask for conclusions of law and opinions nor compel a party to search out facts not readily available to him."

It will be observed, first, that only facts may be procured through interrogatories and, then, that the touchstones of what facts may be so procured are essentiality and relevancy. The facts here contemplated are those which are necessary to the preparation and proof of the case of the party seeking them; facts which, when proven, are evidence which establishes, in whole or in part, the cause of action or defense of such party; facts which tend to sustain or refute the point at issue.

With these principles in mind, we turn our attention to the interrogatories propounded by the landowners, which sought the names, addresses and evaluations of the expert appraisers employed by the Commissioner.

While it may not be disputed that the existence of such experts, their names and their addresses were facts, or that their evaluations were based upon some facts, we are of opinion that these were not such matters the disclosure of which is intended by interrogatories under Code, § 8-320.

The information sought in the interrogatories was not essential to the landowners in the preparation and proof of their cases. They were free to secure, as they did, competent expert witnesses to testify in their behalf at the hearings. The qualifications of their experts were stipulated by the Commissioner and they stipulated the qualifications of the Commissioner's expert. Their counsel conducted extensive and enlightened cross-examination of the Commissioner's expert witness in each case. The landowners and their expert witnesses testified fully as to the value of the properties, displaying careful and complete preparation and full knowledge of the subject at hand. Their proof was sufficient, if it had been accepted by the condemnation commissioners, amply to have sustained awards in the amounts sought by them. The landowners have not offered even a suggestion as to how they were hampered in the preparation and proof of their cases by the lack of the requested information.

The names and addresses of the Commissioner's expert witnesses were not facts which, if proven, would have had any bearing on the point at issue in the cases—the fair market value of the properties. Such names and addresses, if submitted to the condemnation commissioners, could not have had the effect of either increasing or decreasing such value. The information as to the names and addresses of such witnesses lacked, therefore, the ingredient of relevancy which is required by the interrogatory statute.

In the interrogatory with respect to the evaluations of the Commissioner's experts, the landowners were not seeking facts but merely the expressions of opinion of such experts. These opinions were, doubtless, related to facts, such as the location of the properties, their topographical characteristics, the accessibility of facilities, sales of comparable property and many other features, but the ultimate products—the estimates of fair market value—were not facts but the results of the mental processes of the experts, fortified by their experience.

Moreover, there was no fact which the landowners needed in the preparation and proof of their cases which was unavailable to them because the opinions of the Commissioner's experts were denied them. The landowners knew at least as much about their properties as did the Commissioner. The public records were equally available to all. The properties were more readily available for inspection to the landowners' experts than they were to those employed by the Commissioner. Under these circumstances, the landowners were not entitled to the information sought by the interrogatories. *Short* v. *Long*, 197 Va. 104, 108, 109, 87 S. E. 2d 776; *Clark* v. *Hodges*, 185 Va. 431, 439, 39 S. E. 2d 252.

■ Turning to the question relating to the summonses, we find that Code, § 8-324 permits a party to call for the production of a writing in the possession of an adverse party by making affidavit that such writing contains, "material evidence for him." Code, § 8-325 prescribes the action the court may take to compel such production if it is found that the party seeking the writing, *"has no means of proving the contents of such writing . . . but by the person summoned producing what is required* by the summons, and that the same is relevant and material. . . ." [Emphasis added].

In holding, as we do, that the production of the reports of the Commissioner's experts was properly denied, much of what already has been said is applicable here. But a complete answer to the question

is found in that language of Code, § 8-325 which is italicized above. Here again, what the landowners sought to secure were the opinions of the Commissioner's experts as to the fair market value of the properties. As has been seen, the landowners had full means at their own command to prove such value and the facts relative thereto. The landowners failed to qualify, therefore, under that portion of Code, § 8-325 which requires that before production of a writing may be compelled, the seeking party must have, "no means of proving the contents of such writing . . . but by the person summoned producing what is required. . . ." See *United States* v. *Certain Parcels of Land, Etc.,* D. C. 25 F.R.D. 192.

Before leaving the first two questions presented by this appeal, we take note of Rule 3:23 (c), Rules of Court. Although the landowners have not cited this rule, they rely heavily upon the case of *City of Portsmouth* v. *Cilumbrello,* 204 Va. 11, 129 S. E. 2d 31, which interpreted and applied Rule 3:23 (c). This rule provides that, in civil actions at law, the names and addresses of witnesses may be discovered by discovery deposition and any writing may be made available for inspection, copying or photographing, upon order of the court.

We expressly held in *Williamson* v. *Housing Authority,* 203 Va. 653, 656, 125 S. E. 2d 849, that the Rules of Court do not apply to eminent domain proceedings. For this reason, the *Cilumbrello* case has no application here.

We do not decide, because the question is not before us, whether under Rule 3:23 (c) a party may discover the names and addresses of his opponent's expert witnesses in those cases to which the rule applies. It is worthy of note, however, that Rule 3:23 (b) provides:

"The deposition of a witness whose first connection with the case was his employment to give his opinion as an expert may be taken only at the instance of the party who employed him."

The landowners also rely on the case of *State* v. *Whitman,* 91 Ariz. 120, 370 P. 2d 273, where it was held that a landowner was bound to disclose, upon interrogatories propounded by the state in highway eminent domain proceedings, the names and addresses of his prospective expert witnesses and their opinions. The ruling was based upon the discovery provisions of the Arizona Rules of Civil Procedure, 16 A.R.S., which parallel the Federal Rules of Civil Procedure, 28 U.S.C.A. The court appeared to reach its conclusion on the grounds that the Federal Rules permitted the discovery of the

names of the witnesses of an adversary; that some Federal courts, in non-condemnation cases, had permitted the discovery of the names and opinions of expert witnesses; that the Federal Rules were then made applicable to eminent domain proceedings; that Arizona's Rules were the same as the Federal Rules and, therefore, Arizona should permit the discovery of the names and opinions of expert witnesses in condemnation proceedings.

We are unable to give weight to the Arizona decision because it overlooks the Federal rule of decision with regard to expert witnesses in eminent domain proceedings, a rule which was laid down in cases decided subsequent to the time the Federal Rules were made applicable to such proceedings. That rule of decision is that the names and opinions of such experts are not subject to disclosure by way of discovery. *Hickey* v. *United States*, D. C., 18 F.R.D. 88; *United States* v. *Certain Acres of Land, Etc.*, D. C., 18 F.R.D. 98; *United States* v. *7,534.04 Acres of Land, Etc.*, D. C. 18 F.R.D. 146; *United States* v. *6.82 Acres of Land, Etc.*, D. C., 18 F.R.D. 195; Annotation, 86 A.L.R. 2d 138, § 8 [b], p. 160.

Finally, we consider whether the landowners should have been permitted to show how many appraisals had been secured of the properties by the Commissioner.

■ At the hearings, the landowners sought to prove that the Commissioner had secured two appraisals of each property, although only one expert appraiser testified in each case.

We hold that this testimony was properly rejected. The opinion of an expert real estate appraiser is but his inference, drawn from what he sees and learns of the property, of what he considers its fair market value to be. Such inferences were submitted to the condemnation commissioners in this case in the form of opinions of the experts who actually testified. To tell such commissioners that some unnamed expert had also appraised the property would have permitted them to draw the inference that some unspecified value, supposedly higher than that of the Commissioner's expert witness, had been placed on the properties. This would have permitted inference to be built upon inference and speculation to be built upon conjecture. Nothing but confusion could have resulted.

We are of opinion that the trial court properly quashed the interrogatories and the summonses and correctly excluded the disputed testimony. Accordingly, the judgments of the trial court will be

*Affirmed.*